[Cite as *State ex rel. Data Trace Information Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer,* 131 Ohio St.3d 255, 2012-Ohio-753.]

THE STATE EX REL. DATA TRACE INFORMATION SERVICES, L.L.C. ET AL. *v.*

CUYAHOGA COUNTY FISCAL OFFICER.

[Cite as *State ex rel. Data Trace Information Servs., L.L.C. v. Cuyahoga Cty.*

*Fiscal Officer,* 131 Ohio St.3d 255, 2012-Ohio-753.]

*Public records—County recorders' real estate records constitute public records—*
*R.C. 149.011(G)—Electronic copies to be provided at cost—R.C.*
*149.43(B)—Statutory fee of $2 per photocopied page inapplicable to*
*electronic copies—R.C. 9.01 and 317.32(I).*

(No. 2010-2029—Submitted January 3, 2012—Decided February 29, 2012.)

IN MANDAMUS.

_____

**Per Curiam.**

**{¶ 1}** This is an action for a writ of mandamus to compel respondent, the Cuyahoga County fiscal officer, to provide to relators, private companies that store and index electronic images of records and information taken from the records that county recorders have recorded and officials representing those companies, copies of electronic images of all documents recorded in the Cuyahoga County Recorder's Office in the months of July and August 2010 on compact discs, to provide those copies based on their actual cost rather than $2 per electronic image of each page, and to amend the office's public-records policy to comply with the law. Because the requested electronic images constitute records subject to disclosure under the Public Records Act and relators are entitled to copies of those electronic records at actual cost rather than at the higher statutory charge for photocopying documents, we grant the writ to compel the fiscal officer to provide the requested electronic copies at actual cost. Insofar as

the current public-records policy of the recorder's office does not controvert this result, however, we deny the writ insofar as it seeks to amend the policy.

**Facts**

{¶ 2} Relators Data Trace Information Services, L.L.C. and Property Insight, L.L.C. are limited-liability companies that were created by separate title-insurance companies. Data Trace and Property Insight store and organize digital images of and information taken from deeds, mortgages, liens, leases, releases, and other public records that county recorders' offices record. Their clients are companies that evaluate and insure the quality of title to land.

{¶ 3} From 1997 until mid-1998, Patrick O'Malley served as the Cuyahoga County recorder. During O'Malley's tenure as county recorder, the office changed from a paper-based system of managing recorded instruments to a computer-based system. By 1999, the recorder's office recorded deeds and other instruments by electronically scanning the originals to create digital images of them and storing those images in the office's computer system.

{¶ 4} The office procedure is as follows. Persons desiring to file a deed, mortgage, or other instrument with the county recorder tender the instrument and the applicable recording fee to one of the cashiers in the recorder's office. The recorder's office assigns an automated file number to the instrument that shows the date the county recorded the instrument and the sequence in which the instrument is recorded that day. An adhesive label listing the file number and the time of filing is attached to the document, the person's name and telephone number are obtained in case any problem with the document arises, the document is scanned into the recorder's computer system with a digital scanner, and the original paper document is returned to the person tendering it.

{¶ 5} The recorder's office makes a backup copy of the digital images of all the instruments recorded every single day on a compact disc. These backup copies are referred to as master CDs. Using the information that appears on the

electronically recorded instruments, the recorder's office also enters certain information into the computer system that results in the office's grantor-grantee index.

{¶ 6} Beginning in 1999, the recorder's office copied the master CDs onto several blank CDs and provided the CDs for a fee of $50 to various companies, including Data Trace and Property Insight. Those companies also paid a fee of $5,000 each year for regularly updated copies of the recorder's office's grantor-grantee index.

{¶ 7} Neither Data Trace nor Property Insight evaluates the quality of title to land. Instead, they provide access to their databases and searching capabilities, which are more detailed and comprehensive than Cuyahoga County's database and search options.

{¶ 8} In July 2008, Lillian Greene became Cuyahoga County recorder. In September 2009, Greene notified Data Trace and Property Insight that she was increasing the $5,000 annual fee for the updated grantor-grantee index to $7,500 as a result of the "recent county budget crisis" but that the $50 fee for single CDs of the office's daily recordings would remain the same. In the spring of 2010, the recorder's office notified Data Trace and Property Insight that it would no longer be providing CD copies of its daily digital images from its master CDs. Instead, the recorder's office advised the companies that it would give them only paper printouts of the digital copies of the recorded instruments at a fee of $2 per page. The recorder's office purchases blank CDs for use in its routine course of business at a rate of $31.81 for 100 discs.

{¶ 9} On October 5, 2010, Data Trace and Property Insight sent letters to the Cuyahoga County recorder requesting that Greene provide CDs containing electronic copies of all documents publicly recorded in her office in July and August 2010. The letters were sent on their behalf by relator Michael Stutzman, the operations manager of Data Trace, and relator Michael Carsella, the vice

president of Midwest operations of Property Insight. The companies objected to the recorder's recently adopted policy or practice of imposing a charge for all copies of recorded documents, whether images or paper, of $2 per page or image, and requested that the recorder amend her policy of charging more than the actual cost of copying the electronic images of the recorded documents onto CD. The then existing public-records policy adopted by the recorder's office included a section that provided that "[t]he charge for downloaded computer files to a compact disc is $1.00 per disc."

{¶ 10} After three weeks without a response from the recorder, Data Trace and Property Insight filed a public-records mandamus action against the Cuyahoga County recorder in this court in case No. 2010-1823. By letters dated November 16, 2010, the recorder's office finally responded to the companies' October 5, 2010 requests by specifying that it would provide the requested materials upon payment of the statutory fees required by R.C. 317.32. The recorder then moved to dismiss case No. 2010-1823 because the companies had not registered to do business in Ohio. The companies filed an application to dismiss the case, which we granted on November 30, 2010. *Data Trace Information Servs., L.L.C. v. Cuyahoga Cty. Recorder*, 127 Ohio St.3d 1439, 2010-Ohio-5806, 937 N.E.2d 569.

{¶ 11} Data Trace and Property Insight registered and paid the fees to do business in Ohio. On November 24, 2010, relators, Data Trace, Property Insight, Stutzman, and Carsella, filed this public-records mandamus case against the Cuyahoga County recorder. On January 5, 2011, relators deposed Recorder Greene, who claimed that the recorder's office's public-records policy, which provided that the charge for downloaded computer files to compact disc was $1 per disc, did not apply to the companies' requests for the electronically recorded instruments because they were not public records.

4

{¶ 12} After the deposition, around January 10, 2011, the recorder adopted a public-records policy that deleted the fee of $1 per compact disc for downloading computer files and replaced it with a policy that provides that the "cost for copies is $2.00 per page for recorded documents * * * and $.05 per page for all administrative or non-recorded documents," with public-records requests pertaining "to any documents that document the organization, functions, policies, decisions, procedures and operations of the office, subject to certain exemptions under state and federal law."

{¶ 13} In January 2011, Cuyahoga County's new charter form of government became effective. The Cuyahoga County Council adopted a public-records policy that specified that "[t]he charge for computer files downloaded to a compact disc shall be the actual cost, not to exceed $1.26 per disc."

{¶ 14} Under the charter, the Cuyahoga County fiscal officer "shall exercise all powers and perform all duties now or hereafter vested in or imposed by general law upon * * * county recorders." Article V, Section 5.02(1), Cuyahoga County Charter. Therefore, the Cuyahoga County fiscal officer is substituted for the Cuyahoga County recorder as the respondent in this case. S.Ct.Prac.R. 10.2 and Civ.R. 25(D)(1). Although there is no longer a county recorder, the recorder's office still remains. See http://recorder.cuyahoga county.us.

{¶ 15} In February 2011, relators filed a motion for leave to file an amended complaint. In their amended complaint, relators request a writ of mandamus to (1) compel the fiscal officer to provide the requested copies of recorded instruments on compact discs, (2) amend the policy and practice to allow for copying electronically stored recorded instruments onto CDs and to provide electronic copies to relators and other members of the public at cost, and (3) restore the policy limiting the fee charged for electronic copies of records to $1 per CD with no per-page fee.

**{¶ 16}** In March 2011, after relators became concerned that the county had misunderstood their request as asking the recorder's office to create new records in a CD format, they sent the fiscal officer letters stating that the recorder's office could comply with their October 5, 2010 requests by copying the master CDs for July and August 2010 onto blank CDs and charging them $1 per CD in accordance with former recorder Greene's previous public-records policy. In response, the fiscal officer specified that the county agreed that Data Trace and Property Insight could have copies of the records they requested, so the only question was how much the companies must pay, and it was his view that they must pay the fee of $2 per page specified in the Revised Code.

**{¶ 17}** In his answers to relators' interrogatories, the fiscal officer stated that the  total number of pages of instruments that the recorder's office recorded in July and August 2010 was 104,282, and pursuant to R.C. 317.32(I), Data Trace and Property Insight would be charged $2 per page—a total of $208,564—for the requested copies.

**{¶ 18}** In April 2011, we granted relators' motion for leave to file an amended complaint, granted an alternative writ, and issued a schedule for the submission of evidence and briefs.  128 Ohio St.3d 1442, 2011-Ohio-1618, 944 N.E.2d 693.  The parties have submitted evidence and briefs.  In addition, the fiscal officer has filed a motion for oral argument, and the Reporters Committee for Freedom of the Press, Ohio Newspaper Association, and Ohio Land Title Association have filed amicus curiae briefs in support of relators.

**{¶ 19}** This cause is now before the court for our consideration of the merits and the motion for oral argument.

## Legal Analysis

*Oral Argument*

**{¶ 20}** The fiscal officer requests oral argument.  "Oral argument is not required in an original action in this court; instead, oral argument is discretionary

in these cases." *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 114 Ohio St.3d 183, 2007-Ohio-3831, 870 N.E.2d 1174, ¶ 42. "Nevertheless, we have discretion to grant oral argument pursuant to S.Ct.Prac.R. IX(2)(A) [now 9.2(A)], and in exercising this discretion, we consider whether the case involves a matter of great public importance, complex issues of law or fact, a substantial constitutional issue, or a conflict among courts of appeals." *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 111 Ohio St.3d 118, 2006-Ohio-5339, 855 N.E.2d 444, ¶ 15.

{¶ 21} First, the fiscal officer does not present any credible reason for oral argument. He merely states in conclusory fashion that oral argument "will assist this Court in resolving the important legal issues in this case." *See State ex rel. Lorain v. Stewart*, 119 Ohio St.3d 222, 2008-Ohio-4062, 893 N.E.2d 184, ¶ 18.

{¶ 22} Second, this case does not involve complex facts, a conflict between courts of appeals, or any constitutional issue.

{¶ 23} Finally, the parties' briefs are sufficient to resolve this public-records mandamus case. *State ex rel. Mahajan v. State Med. Bd. of Ohio*, 127 Ohio St.3d 497, 2010-Ohio-5995, 940 N.E.2d 1280, ¶ 65.

{¶ 24} Therefore, we deny the fiscal officer's motion for oral argument.

*Mandamus in Public-Records Cases*

{¶ 25} "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6; R.C. 149.43(C)(1). "Relators in public-records mandamus cases need not establish the lack of an adequate remedy in the ordinary course of law." *State ex rel. Am. Civ. Liberties Union of Ohio, Inc. v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 24.

**{¶ 26}** "The Public Records Act reflects the state's policy that 'open government serves the public interest and our democratic system.' " *State ex rel. Glasgow v. Jones*, 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, ¶ 13, quoting *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 20. "Consistent with this policy, we construe R.C. 149.43 liberally in favor of broad access and resolve any doubt in favor of disclosure of public records." *Id.*

**{¶ 27}** The fiscal officer argues that relators are not entitled to the requested electronic copies of recorded documents at cost, because the documents are not records for purposes of the Public Records Act, and that R.C. 317.32(I), when read in pari materia with R.C. 9.01, requires the charge of $2 per page.

*Documents Recorded in County Recorder's Office*

*as Records Subject to R.C. 149.43*

**{¶ 28}** The fiscal officer first claims that relators are not entitled to the requested electronic copies of documents recorded in the county recorder's office at cost because the documents, although otherwise publicly available, are not records subject to disclosure under R.C. 149.43.

**{¶ 29}** R.C. 149.43(A)(1) defines "[p]ublic record" for purposes of the Public Records Act as "records kept by any public office, including, but not limited to, * * * county [offices]." R.C. 149.011(G) provides that for R.C. Chapter 149,

> "[r]ecords" includes any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the

organization, functions, policies, decisions, procedures, operations, or other activities of the office.

R.C. 1306.01(G) defines an "[e]lectronic record" as "a record created, generated, sent, communicated, received, or stored by electronic means."

{¶ 30} In *Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, at ¶ 20, we recognized the expansive scope of the R.C. 149.011(G) definition of "records":

We previously have held that the General Assembly's use of "includes" in R.C. 149.011(G) as a preface to the definition of "records" is an indication of expansion rather than constriction, restriction, or limitation and that the statute's use of the phrase "any document" is one encompassing all documents that fit within the statute's definition, regardless of "form or characteristic." *State ex rel. Cincinnati Post v. Schweikert* (1988), 38 Ohio St.3d 170, 172-173, 527 N.E.2d 1230. There can be no dispute that there is great breadth in the definition of "records" for the purposes here. Unless otherwise exempted or excepted, almost all documents memorializing the activities of a public office can satisfy the definition of "record." *State ex rel. Beacon Journal Publishing Co. v. Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, ¶ 13.

{¶ 31} To establish that the electronically recorded documents are records for purposes of R.C. 149.011(G) and 149.43, they must be (1) documents, devices, or items, including electronic records, (2) created or received by or coming under the jurisdiction of the recorder's office, (3) that serve to document

the organization, functions, policies, decisions, procedures, operations, or other activities of the office. R.C. 149.011(G); *see also State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, 833 N.E.2d 274, ¶ 19.

{¶ 32} Documents electronically recorded by the recorder's office satisfy the first two requirements of the three-part definition of "records" under R.C. 149.011(G) and 149.43. The documents are received by the recorder's office, and electronic images of them are created by the recorder's office when they are scanned into the office's computer system.

{¶ 33} The dispositive issue for this preliminary question is thus whether the electronically recorded instruments serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of the recorder's office.

{¶ 34} The fiscal officer contends that documents recorded in a county recorder's office are not records subject to R.C. 149.43, because they do not document the organization, functions, policies, decisions, operations, or other activities of the recorder's office. Instead, according to the fiscal officer, they document the independent acts of third parties who present the instruments to the officer for recording.

{¶ 35} The fiscal officer's contention lacks merit. In general, a "county recorder is an elected public official charged with the performance of duties as prescribed by statute." *State ex rel. Preston v. Shaver*, 172 Ohio St. 111, 114, 173 N.E.2d 758 (1961).

{¶ 36} Under R.C. 5301.25(A), "[a]ll deeds, land contracts * * *, and instruments of writing properly executed for the conveyance or encumbrance of lands, tenements, or hereditaments * * * shall be recorded in the office of the county recorder of the county in which the premises are situated." County recorders have various statutory duties, including keeping certain records (R.C. 317.08), recording certified matter in reference to bankruptcy (R.C. 317.10),

indorsing the date, precise time of presentation, and file number of deeds or other written instruments that are required or authorized by statute to be recorded and that are presented to the recorder for that purpose (R.C. 317.13), making and keeping up direct and reverse indexes of the names of parties to instruments received for record (R.C. 317.18), and keeping a daily register of deeds and mortgages (R.C. 317.19).

{¶ 37} R.C. 317.13(B) authorizes county recorders, within their discretion, to "refuse to record an instrument of writing presented to the recorder for recording if the instrument is not required or authorized by the Revised Code to be recorded or the recorder has reasonable cause to believe the instrument is materially false or fraudulent." R.C. 317.112 and 317.114 set forth certain standards for instruments presented to county recorders for recording and impose various duties on recorders should those standards not be met.

{¶ 38} The instruments that the county recorder's office electronically records and places into the office's computer system reflect the office's compliance with its many statutory duties and its exercise of discretion over the recording process. The electronic records thus manifestly document the organization, functions, policies, decisions, operations, or other activities of the recorder's office. Without these recorded instruments, the recorder's office could not perform its preeminent functions. In fact, the chief of staff of the recorder's office acknowledged that providing copies of recorded instruments to the public is a primary function of the office.

{¶ 39} The fiscal officer's reliance on a Pennsylvania appellate court case to argue otherwise is unpersuasive. *Inkpen v. Roberts*, 862 A.2d 700 (Pa.Commw.2004). In *Inkpen*, the intermediate appellate court held that deeds and mortgages were not public records under the Pennsylvania Right-to-Know

Act, but the definition of "public record" in that statute is significantly more limited than the definition of "records" in the Ohio Public Records Act.[1]

{¶ 40} Notably, we are not addressing the issue of personally identifiable information in the requested electronically recorded instruments here. *Compare Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, 833 N.E.2d 274, syllabus (home addresses of state employees are not records for purposes of R.C. 149.43); *State ex rel. McCleary v. Roberts*, 88 Ohio St.3d 365, 370, 725 N.E.2d 1144 (2000) (personal information regarding children who used city's recreational facilities was not "record" subject to R.C. 149.43); *see* R.C. 317.082 (requiring that preparers of documents to be recorded not include personal information in the documents).

{¶ 41} Therefore, the written instruments electronically recorded by the recorder's office are records under R.C. 149.011(G) and 149.43, the Public Records Act. By so holding, we accord the applicable definition of "records" in R.C. 149.011(G) the breadth that the General Assembly intended and thereby further the essential purpose of Ohio's Public Records Act—that the public be informed and be able to scrutinize and monitor the government's work and decisions. *See generally Kish*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 15-20.

*Applicable Fee for Copies of Electronically Recorded Instruments*

{¶ 42} The fiscal officer next asserts that relators are required to pay $2 per digital image of each page of the requested electronically recorded documents from July and August 2010, which would result in Data Trace and Property

---

1. Title 65, Section 66.1 of the Pennsylvania Statutes defines a public record as "[a]ny account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons."

Insight paying $208,564 each for the 104,282 pages of recorded instruments requested.

**{¶ 43}** In general, "R.C. 149.43(B)(1) provides that copies of public records shall be made available 'at cost.' " *State ex rel. Slagle v. Rogers*, 103 Ohio St.3d 89, 2004-Ohio-4354, 814 N.E.2d 55, ¶ 5; R.C. 149.43(B)(1) ("upon request, a public office or person responsible for public records shall make copies of the requested public record available at cost").  This means *actual* cost and does not include labor costs for employee time to respond to the request and make the copies.  *See State ex rel. Warren Newspapers, Inc. v. Hutson*, 70 Ohio St.3d 619, 625-626, 640 N.E.2d 174 (1994), citing *State ex rel. Bonnell v. Cleveland*, 8th Dist. No. 64854, 1993 WL 335426 (Aug. 26, 1993) (court relied on stipulated evidence regarding actual per-page copying costs consisting of costs of toner, paper, and copying time).

**{¶ 44}** Relators claim that the requested CDs containing copies of electronically recorded instruments from July and August 2010 would likely have an actual cost of no more than $1 per CD and that they should pay this fee under R.C. 149.43(B).

**{¶ 45}** The fiscal officer counters that R.C. 317.32 controls the cost of the requested copies.  Subsection (I) of R.C. 317.32 provides that the county recorder shall charge $2 per page for photocopying a recorded document:

> The county recorder shall charge and collect the following fees, to include base fees for the recorder's services and housing trust fund fees * * *:
>
> * * *
>
> (I) For photocopying a document, other than at the time of recording and indexing as provided for in division (A) of this section, a base fee of one dollar and a housing trust fund fee of one

dollar per page, size eight and one-half inches by fourteen inches, or fraction thereof.

**{¶ 46}** In determining which statutory cost provision applies for the requested copies of electronically recorded documents, the fiscal officer claims that the more specific provision that applies to fees charged by county recorders for photocopying a recorded document—R.C. 317.32(I)—prevails over the more general public-records provision—R.C. 149.43(B)(1).

**{¶ 47}** R.C. 1.51 provides:

If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.

**{¶ 48}** "When two statutory provisions are alleged to be in conflict, R.C. 1.51 requires us to construe them, where possible, to *give effect to both*." (Emphasis sic.) *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino*, 93 Ohio St.3d 231, 234, 754 N.E.2d 789 (2001). " 'Only where the conflict is deemed *irreconcilable* does R.C. 1.51 mandate that one provision shall prevail over the other.' " (Emphasis sic.) *Id.*, quoting *United Tel. Co. of Ohio v. Limbach*, 71 Ohio St.3d 369, 372, 643 N.E.2d 1129 (1994).

**{¶ 49}** In assessing whether there is a conflict between R.C. 317.32(I) and 149.43(B)(1), we must determine the meaning of the word "photocopy" because the special fee provision in R.C. 317.32(I) applies only to "photocopying a

document" that has been recorded in a county recorder's office. "In order to understand a particular word used in a statute, a court is to read it in context and construe it according to the rules of grammar and common usage. R.C. 1.42. If, as here, a term is not defined in the statute, it should be accorded its plain and ordinary meaning." *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 17.

**{¶ 50}** The plain and ordinary meaning of "photocopy" is "a negative or positive photographic reproduction of graphic matter (as a drawing or printing)," and the common definition of "photograph" is "a picture, image, or likeness obtained by photography." Webster's Third New International Dictionary 1702 (1986).

**{¶ 51}** In addition, relators' expert, Peter Shulman, an assistant professor of history at Case Western Reserve University, provided uncontroverted evidence that the modern meaning of photocopying emphasizes xerography—a process originally called electron photography. According to Professor Shulman, this process consists of the following five steps: (1) a special plate is charged with static electricity, (2) once the plate is charged, the document to be copied is placed above it, a light projects an image of the document onto the plate, and the charge drains away from the plate except in places where the ink on the document was projected, (3) a dry ink called toner is dusted over the selectively charged plate so that the toner forms an image of the document to be copied atop the charged plate, (4) a blank sheet of paper receives the duplicated image, and (5) the duplicated document is heated to fuse or melt the toner to the paper, creating a permanent copy, and the charged plate is wiped clean of the charge and residual toner. Photocopying relies on copying physical pages one at a time.

**{¶ 52}** By contrast, copying electronic images of recorded documents onto a CD involves no photography or xerography and is done through stored

computer memory, and the data is stored not in terms of "pages" but in terms of sequences of 1s and 0s. No paper is involved in the process.

{¶ 53} Therefore, the plain meaning of "photocopying" does not encompass relators' requests that the fiscal officer copy onto a CD electronically recorded instruments. There is no conflict, much less an irreconcilable one, between R.C. 317.32(I) and 149.43(B)(1) for the requested records. In cases in which photocopying physical pages of recorded documents is requested, a county recorder shall charge $2 per page. R.C. 317.32(I). In cases in which CDs containing electronically recorded documents are requested, the county recorder shall charge the actual cost of the copies. R.C. 149.43(B)(1). We reached a similar result in *Slagle*, 103 Ohio St.3d 89, 2004-Ohio-4354, 814 N.E.2d 55, in which we held that R.C. 2301.24 superseded the "at cost" provision of R.C. 149.43(B)(1) for copies of transcripts of court proceedings, but not for audiotapes of those proceedings. By so construing these provisions, we give effect to both.

{¶ 54} The fiscal officer next relies on R.C. 9.01 to equate electronically copying recorded documents with photocopying for purposes of charging relators $2 per digital image of each page under R.C. 317.32(I).

{¶ 55} R.C. 9.01 provides:

When any officer, office, court, commission, board, institution, department, agent, or employee of the state, of a county, or of any other political subdivision who is charged with the duty or authorized or required by law to record, preserve, keep, maintain, or file any record, document, plat, court file, paper, or instrument in writing, or to make or furnish copies of any of them, deems it necessary or advisable, when recording or making a copy or reproduction of any of them or of any such record, for the purpose of recording or copying, preserving, and protecting them,

reducing space required for storage, or any similar purpose, to do so by means of any photostatic, photographic, miniature photographic, film, microfilm, or microphotographic process, or perforated tape, magnetic tape, other magnetic means, electronic data processing, machine readable means, or graphic or video display, or any combination of those processes, means, or displays, which correctly and accurately copies, records, or reproduces, or provides a medium of copying, recording, or reproducing, the original record, document, plat, court file, paper, or instrument in writing, such use of any of those processes, means, or displays for any such purpose is hereby authorized. Any such records, copies, or reproductions may be made in duplicate, and the duplicates shall be stored in different buildings. The film or paper used for a process shall comply with the minimum standards of quality approved for permanent photographic records by the national bureau of standards. All such records, copies, or reproductions shall carry a certificate of authenticity and completeness, on a form specified by the director of administrative services through the state records program.

Any such officer, office, court, commission, board, institution, department, agent, or employee of the state, of a county, or of any other political subdivision may purchase or rent required equipment for any such photographic process and may enter into contracts with private concerns or other governmental agencies for the development of film and the making of reproductions of film as a part of any such photographic process. When so recorded, or copied or reproduced to reduce space required for storage or filing of such records, such photographs,

microphotographs, microfilms, perforated tape, magnetic tape, other magnetic means, electronic data processing, machine readable means, graphic or video display, or combination of these processes, means, or displays, or films, or prints made therefrom, when properly identified by the officer by whom or under whose supervision they were made, or who has their custody, *have the same effect at law as the original record or of a record made by any other legally authorized means, and may be offered in like manner and shall be received in evidence in any court* where the original record, or record made by other legally authorized means, could have been so introduced and received. Certified or authenticated copies or prints of such photographs, microphotographs, films, microfilms, perforated tape, magnetic tape, other magnetic means, electronic data processing, machine readable means, graphic or video display, or combination of these processes, means, or displays, shall be admitted in evidence equally with the original.

(Emphasis added.)

**{¶ 56}** The fiscal officer's contention lacks merit. He relies on the sentence specifying that copies shall have "the same effect at law" as the original record. But R.C. 9.01 merely provides that a copy of a recorded document shall "have the same effect at law as the original record or of a record made by any other legally authorized means, and may be offered in like manner and shall be received in evidence in any court where the original record, or record made by other legally authorized means, could have been so introduced and received." The manifest meaning of this provision is that copies of recorded documents have the same substantive legal effect as the original recorded document regardless of

the medium in which the copy is made. This provision does not cover the price a county recorder may charge for an electronic copy of a recorded instrument.

{¶ 57} The fiscal officer relies on a 1933 attorney general opinion to support his interpretation of R.C. 9.01 and 317.32(I). 1933 Ohio Atty.Gen.Ops. No. 167. But "Attorney General opinions are not binding on courts; at best, they are persuasive authority." *State ex rel. Van Dyke v. Pub. Emps. Retirement Bd.*, 99 Ohio St.3d 430, 2003-Ohio-4123, 793 N.E.2d 438, ¶ 40. In the opinion, the attorney general ruled that the photostatic or photographic process authorized by G.C. 32-1, a predecessor statute to R.C. 9.01, was included in the term "printing" as used in G.C. 2778, a predecessor statute to R.C. 317.32. That opinion, however, recognized that the common dictionary definition of "printing" in G.C. 2778 included the photostatic or photographic process. *Id.* at 196. By contrast, the definition of "photocopying" in R.C. 317.32(I) does not include electronically copying documents.

{¶ 58} In addition, the opinion addressed the fee charged for recording documents and not the fee for copying recorded documents.

{¶ 59} Further, the sentence in R.C. 9.01 that confers the "same effect at law" and that the fiscal officer relies on was not included in the version of G.C. 32-1 construed by the attorney general in 1933 Ohio Atty.Gen.Ops. No. 167. 113 Ohio Laws 773.

{¶ 60} In fact, in more recent opinions, the attorney general has not cited 1933 Ohio Atty.Gen.Ops. No. 167 and has instead adopted a strict construction of when the R.C. 317.32(I) fee of $2 per page for photocopying a recorded document is applicable. 2004 Ohio Atty.Gen.Ops. No. 2004-033, syllabus ("A county recorder who makes available in her office a photocopying machine for use by the public may not charge the two dollar per page fee set forth in R.C. 317.32(I) where the photocopier is operated by the public without the assistance of the recorder or her staff. The recorder is, instead, subject to R.C. 149.43(B), which

requires a public office to provide copies of public records 'at cost' "); 2004 Ohio Atty.Gen.Ops. No. 2004-011, paragraph one of the syllabus ("R.C. 317.32(I) does not require or authorize a county recorder to impose the fees described therein upon a member of the public who is using a digital camera or other equipment to make copies of documents in the recorder's office, where the equipment is not provided by the county recorder. R.C. 149.43 requires a county recorder to make the public records he maintains available for inspection, without charge, to members of the public, including those that bring their own equipment to make copies of the records they inspect"); 2000 Ohio Atty.Gen.Ops. No. 2000-046, paragraph three of the syllabus ("A county recorder may not charge and collect the fee prescribed by R.C. 317.32(I) for photocopying a document when a person accesses an indexed public record by way of the Internet and prints a copy of the record on a computer printer that the recorder neither operates nor maintains"); 1994 Ohio Atty.Gen.Ops. No. 94-006, paragraph three of the syllabus ("If a person requests copies of public records stored by the county recorder on microfiche or film, R.C. 149.43(B) requires the county recorder to make available in the same medium a copy of the portions of the microfiche or film containing those public records, * * * if the person assumes the expense of making a copy in that medium, in lieu of the photocopying fee prescribed by R.C. [317.32(I)]").

{¶ 61} Finally, this result is consistent with the practice of most county recorders' offices in Ohio. In March and April 2011, a witness for relators asked each of the remaining 87 county recorders' offices to provide him with a CD containing copies of instruments recorded on August 25, 2010. Sixty of those counties complied with the requests, and they charged him fees ranging from $1 to $20 per compact disc. Only one county requested that he pay $2 per page for paper copies of the requested records. Cuyahoga County thus appears to be an outlier in requiring the $2 per page fee for electronic records of recorded instruments.

**{¶ 62}** Therefore, relators are entitled to copies of the requested electronically recorded documents for July and August 2010 at actual cost rather than the fee of $2 per page in R.C. 317.32(I) for photocopies. Because relators claim that the actual cost is no more than $1 per CD, and the fiscal officer did not submit evidence establishing a different actual cost, relators are entitled to the requested records at that cost.

*Electronic Copies of Master CDs*

**{¶ 63}** Insofar as relators now claim that they are entitled to copies of the recorder's office's master CDs of the instruments recorded in July and August 2010, " 'it is the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue.' " *State ex rel. Taxpayers Coalition v. Lakewood*, 86 Ohio St.3d 385, 391, 715 N.E.2d 179 (1996), quoting *State ex rel. Fant v. Tober*, 8th Dist. No. 63737, 1993 WL 173743, *1 (May 20, 1993), *affirmed,* 68 Ohio St.3d 117, 623 N.E.2d 1202 (1993). In addition, " 'R.C. 149.43(C) requires a prior request as a prerequisite to a mandamus action.' " *Am. Civ. Liberties Union of Ohio*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 33, quoting *Taxpayers Coalition* at 390.

**{¶ 64}** Relators' October 5, 2010 records requests, which are the subject of this mandamus case, did not specifically request copies of the recorder's office's master CDs for July and August 2010. Instead, relators requested electronic copies of all documents publicly recorded in the office for those months. After relators filed an amended complaint, they informed the fiscal officer that copies of the master CDs would satisfy their record requests. But relators never amended their amended complaint to include a request for copies of the master CDs, and the fiscal officer has not consented to a modification of relators' records requests or the relief prayed for in relators' amended complaint. Therefore, the fiscal officer need not provide copies of the master CDs to comply with the relators' requests at issue in this case.

**{¶ 65}** Nevertheless, the fiscal officer could now comply with the requests by providing copies of the master CDs for July and August 2010, which also constitute records subject to the Public Records Act. *See* R.C. 149.011(G); *State ex rel. Margolius v. Cleveland*, 62 Ohio St.3d 456, 459, 584 N.E.2d 665 (1992) ("a compilation of information gathered from public records is a separate public record subject to disclosure under R.C. 149.43"), citing *State ex rel. Cincinnati Post v. Schweikert*, 38 Ohio St.3d 170, 527 N.E.2d 1230 (1988). The master CDs document the daily procedure and operation of the recorder's office of making backup copies of digital images of all instruments recorded every day on compact discs. And notwithstanding the fiscal officer's assertion, he has not established that the master CDs constitute security records, as defined in R.C. 149.433(A)(3), which would be exempt from disclosure. *See* R.C. 149.433(B); *see generally State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus.

**{¶ 66}** As relators ultimately acknowledge, "it really doesn't matter whether the [fiscal officer or recorder's office] dubs [the] master CDs to comply with relators' requests, which takes only a few minutes, or chooses to copy digital deeds directly from its server to a CD, which takes longer." *See* R.C. 149.43(B)(6) ("The public office or the person responsible for the public record shall permit that person to choose to have the public record duplicated upon paper, upon the same medium upon which the public office or person responsible for the public record keeps it, or upon any other medium upon which the public office or person responsible for the public record determines that it reasonably can be duplicated as an integral part of the normal operations of the public office or person responsible for the public record").

*Public-Records Policy*

**{¶ 67}** Relators request that the fiscal officer amend the recorder's office's public-records policy so that the recorder's office returns to the policy in

effect when former recorder Greene was deposed, which specified a charge of $1 per compact disc for downloaded computer files.

{¶ 68} Under R.C. 149.43(E)(1), "all public offices shall adopt a public records policy in compliance with this section for responding to public records requests." *See also State ex rel. Morgan v. Strickland*, 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, ¶ 11. Cuyahoga County adopted a new public-records policy in January 2011, which the fiscal officer claims superseded the recorder's office's policy that relators contest here. Relators do not claim otherwise. Because the policy adopted by the Cuyahoga County Council in 2011 does not have the same defect regarding the charge for electronic copies that was contained in the recorder's office policy they contested, relators are not entitled to a writ of mandamus to compel the fiscal officer to amend a policy that, evidently, no longer exists.

*Attorney Fees and Statutory Damages*

{¶ 69} Relators request an award of attorney fees and statutory damages. Although relators requested attorney fees and statutory damages in their amended complaint and reiterated their request in the conclusion of their merit briefs, they included no separate argument in either brief concerning their request. Relators thus waived this claim. *Mun. Constr. Equip. Operators' Labor Council*, 114 Ohio St.3d 183, 2007-Ohio-3831, 870 N.E.2d 1174, at ¶ 83 (relators in mandamus case waived claim for attorney fees by not including any argument in support of claim in merit brief).

{¶ 70} Moreover, even if waiver did not apply, relators are not entitled to statutory damages, because they did not transmit their October 5, 2010 records requests "by hand delivery or certified mail," as required by R.C. 149.43(C)(1). *See State ex rel. Mahajan v. State Med. Bd. of Ohio*, 127 Ohio St.3d 497, 2010-Ohio-5995, 940 N.E.2d 1280, ¶ 59.

**Conclusion**

**{¶ 71}** Based on the foregoing, we grant a writ of mandamus to compel the Cuyahoga County fiscal officer to provide to relators copies of electronic images of all documents recorded in the Cuyahoga County Recorder's Office in July and August 2010 on compact discs at a cost of $1 per disc. Because the county's existing public-records policy does not violate the requirement to charge the actual cost of these records, however, we deny the writ of mandamus insofar as it seeks to amend a policy that is no longer effective. By so holding, we recognize that the Public Records Act "protects the general right of the people of Ohio to monitor the decisions of their own government through the more specific right to freely access public records." *Rhodes*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 19.

Writ granted in part
and denied in part.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Baker & Hostetler, L.L.P., David Marburger, Michael Mumford, and John Blanton, for relators.

McDonald Hopkins, L.L.C., David T. Movius, and Matthew J. Cavanagh, for respondent.

Lucy A. Dalglish, urging granting of the writ for amicus curiae Reporters Committee for Freedom of the Press.

Zeiger, Tigges & Little, L.L.P., Marion H. Little Jr., and Kris Banvard, urging granting of the writ for amicus curiae Ohio Land Title Association.

Graydon, Head & Ritchey, L.L.P., and John C. Greiner, urging granting of the writ for amicus curiae Ohio Newspaper Association.

_____