[Cite as *State v. Stevens*, 2023-Ohio-362.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 22CA11 |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| Robert A. Stevens, | : | |
| Defendant-Appellant. | : | **RELEASED 2/03/2023** |

_____

APPEARANCES:

R. Jessica Manungo, Assistant State Public Defender, Office of the Ohio Public Defender, Columbus, Ohio, for appellant.

Brigham M. Anderson, Lawrence County Prosecutor, and Steven K. Nord, Assistant Prosecuting Attorney, Ironton, Ohio, for appellee.
_____

Hess, J.

**{¶1}** Robert A. Stevens appeals from a judgment of the Lawrence County Court of Common Pleas convicting him, following a jury trial, of tampering with evidence in violation of R.C. 2921.12(A)(1). In his sole assignment of error, Stevens contends that the trial court erred when it denied his Crim.R. 29(A) motion for judgment of acquittal because there is insufficient evidence to support all the essential elements of that offense. However, after viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found all the essential elements of the offense proven beyond a reasonable doubt. Accordingly, we overrule the assignment of error and affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶2}     On January 27, 2021, Stevens was indicted in Case No. 20-CR-460 on one count of aggravated possession of drugs, one count of improper handling of a firearm in a motor vehicle, and one count of having weapons while under disability, all alleged to have occurred on or about December 11, 2020.[1]  On June 1, 2021, Stevens was indicted in Case No. 21-CR-182 on one count of tampering with evidence and one count of escape, both alleged to have occurred on or about February 8, 2021. The trial court consolidated the cases for purposes of trial.

{¶3}     During the jury trial, Trooper Jeffrey Martin of the Ohio State Highway Patrol testified about events underlying the indictment in Case No. 20-CR-460, i.e., a December 11, 2020 traffic stop which resulted in him arresting Stevens and charging him with possession of drugs and drug paraphernalia, improper handling of a firearm in a motor vehicle, and having weapons while under disability. Captain Lynn Stewart of the Lawrence County Adult Probation Department testified about events underlying the indictment in Case No. 21-CR-182.  On December 23, 2020, Stevens secured a $15,000 "O.R.," i.e., own recognizance bond.[2]  He had to wear an ankle monitor which was "a very thick device" containing a global positioning satellite or "GPS" component to track his location and a cell phone which the probation department could use to communicate with him.  Captain Stewart testified that when someone is released on an ankle monitor, the probation department takes a photograph of the bottom of the monitor so it knows which

---

[1] Some information about Case No. 20-CR-460, which is not the subject of this appeal, is taken from our decision in *State v. Stevens*, 4th Dist. Lawrence Nos. 21CA15, 21CA16, 2022-Ohio-2518.

[2] Evidently the trial court made the decision to release Stevens on bond during his arraignment hearing in a third case before it, Case No. 20-CR-424, involving an attempted burglary charge which the jury heard no evidence about and was later dismissed.

one it gave the individual, and the individual must sign a Participant Conditions Agreement which sets forth conditions they must "abide by."

{¶4} Captain Stewart testified that there are restrictions on where individuals required to wear an ankle monitor are allowed to go but did not testify to specific restrictions on Stevens. She also testified that Stevens had to keep the ankle monitor charged, that the monitor "can be charged for twenty-four hour increments," and that it must be charged "three hours every evening." She testified that when a monitor powers down, it "goes into like a sleep mode. There is an internal…an internal, so much it'll store internally as well, but after it powers down, it has no electrical device, and then we can no longer supervise that offender." In addition, she testified that Stevens had to report to the probation department in person every Monday so a "test call" could be done on the monitor to ensure it was "charging well."

{¶5} On Friday, February 5, 2021, Stevens came to the probation department and submitted a "doctor's excuse" for a recent hospital stay and a request to change his address. He was wearing the ankle monitor at that time. A monitoring company notifies the probation department if an individual wearing an ankle monitor is "out of area" or "if their batteries are low." That evening, the probation department received notice that the ankle monitor "was not taking a charge." Captain Stewart testified that "for some reason [Stevens] was not able to either secure it in a good outlet, which sometimes that happens, but it…it was…it wasn't charging. He wasn't charging it." She spoke with Stevens on his personal cell phone "many times" that evening. She told him that the battery in the ankle monitor needed charged. Stevens "advised the device would start to turn green, but then turn red," and Captain Stewart "advised him to keep charge on it to see if that worked."

She "told him that the device had an internal charge for such purposes, that he still needed to charge it * * *." In addition, he told her "there were bedbugs at the address change that he had put in for earlier in the day" and asked to go back to the address he stayed at the previous night. She gave him permission to go to his previous address and told him to check in with the probation department on Monday. He told her that he would bring in $100 dollars then "for two address changes." At 10:01 p.m., the probation department lost communication with the ankle monitor and could no longer track Stevens's whereabouts.

{¶6} On Monday, February 8, 2021, Stevens failed to report to the probation department. Captain Stewart unsuccessfully tried to reach Stevens on his personal cell phone and on his girlfriend's phone. She also had no communications with him on the other two phone numbers he had previously given the probation department. On February 9, 2021, Captain Stewart made a request to revoke Stevens's bond. A capias or warrant was issued for his arrest. Stevens did not report for any other Monday meetings at the probation department. He was arrested in May 2021 while not wearing the ankle monitor. Captain Stewart did not know what happened to the device and testified that there was an "open investigation" with respect to it.

{¶7} In Case No. 20-CR-460, the state moved to enter a nolle prosequi as to the having weapons while under disability charge. The trial court orally granted the motion and later memorialized that decision in an entry. The jury found Stevens guilty of aggravated possession of drugs and improper handling of a firearm in a motor vehicle. On October 18, 2021, the court issued a judgment entry sentencing Stevens on those counts, which he appealed.

{¶8} In Case No. 21-CR-182, the trial court orally granted the state's motion to enter a nolle prosequi as to the escape charge but did not memorialize that decision in an entry. The jury found Stevens guilty of tampering with evidence. On October 18, 2021, the court issued a judgment entry sentencing Stevens for that offense, which he appealed.

{¶9} In Lawrence App. No. 21CA15, we affirmed the trial court's judgment in Case No. 20-CR-460. *State v. Stevens*, 4th Dist. Lawrence Nos. 21CA15, 21CA16, 2022-Ohio-2518, ¶ 1. In Lawrence App. No. 21CA16, we dismissed the appeal from the trial court's judgment in Case No. 21-CR-182 for lack of jurisdiction because the trial court failed to resolve the escape charge via journal entry, so the judgment appealed from in that case was not a final appealable order. *Id.* at ¶ 2. Subsequently, the trial court issued an entry memorializing its decision to grant the state's motion to enter a nolle prosequi on the escape charge. This appeal followed.

## II. ASSIGNMENT OF ERROR

{¶10} Stevens presents one assignment of error: "The trial court erred by denying Mr. Stevens' Criminal Rule 29 motion in the absence of sufficient evidence to support all the essential elements of a tampering with evidence charge."

## III. LAW AND ANALYSIS

{¶11} In his sole assignment of error, Stevens contends that the trial court erred when it denied his Crim.R. 29 motion for judgment of acquittal on the tampering with evidence charge because there is insufficient evidence to support all the essential elements of the offense.

{¶12} Crim.R. 29(A) provides: "The court on motion of a defendant * * * after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. In reviewing the sufficiency of the evidence for a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶13} "A sufficiency assignment of error challenges the legal adequacy of the state's prima facie case, not its rational persuasiveness." *State v. Anderson*, 4th Dist. Highland No. 18CA14, 2019-Ohio-395, ¶ 13. "That limited review does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Musacchio v. United States*, 577 U.S. 237, 243, 136 S.Ct. 709, 193 L.Ed.2d 639 (2016), quoting *Jackson* at 319. A reviewing court will not overturn a conviction based on insufficient evidence " 'unless reasonable minds could not reach the conclusion that the trier of fact did.' " *State v. Cook*, 4th Dist. Gallia No. 18CA11, 2019-Ohio-4745, ¶ 15, quoting *State v. Bradshaw*, 4th Dist. Scioto No. 17CA3803, 2018-Ohio-1105, ¶ 15.

**{¶14}** R.C. 2921.12(A)(1) states: "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]" "There are three elements of this offense: (1) the knowledge of an official proceeding or investigation in progress or likely to be instituted, (2) the alteration, destruction, concealment, or removal of the potential evidence, (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 11.

### A. Alteration, Destruction, Concealment, or Removal

**{¶15}** Initially, we address the alteration, destruction, concealment, or removal of the potential evidence element. Although the parties' appellate briefs sometimes refer to Stevens destroying or removing the ankle monitor, the indictment alleged that Stevens "did alter or conceal a thing." The trial court instructed the jury accordingly.

**{¶16}** R.C. 1.42 provides that words in the Ohio Revised Code "shall be read in context and construed according to the rules of grammar and common usage." If a statutory term is not defined, " 'it should be accorded its plain and ordinary meaning.' " *State ex rel. Data Trace Information Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288, ¶ 49, quoting *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 17. " 'Courts have used dictionary definitions to determine the plain and ordinary meaning of a statutory term.' " *Denuit v. Ohio State Bd. of Pharmacy*, 2013-Ohio-2484, 994 N.E.2d 15, ¶ 30 (4th Dist.), quoting *State v. Jackson*, 12th Dist. Butler No. CA2011-06-096, 2012-Ohio-4219,

¶ 34. Merriam-Webster defines "alter" to mean, inter alia, "to make different without changing into something else," and defines "conceal" to mean (1) "to prevent disclosure or recognition of," and (2) "to place out of sight."  Merriam-Webster, https://www.merriam-webster.com/dictionary/alter  and  https://www.merriam-webster.com/dictionary/conceal (accessed February 1, 2023).

{¶17}  In his appellate brief, Stevens makes the statement that the state failed to present sufficient evidence that he "concealed or destroyed potential evidence." However, his brief does not elaborate on this statement and instead focuses on the other two elements of the offense.  And in his reply brief, Stevens states that the state presented insufficient evidence of "two out of the three elements" of the offense and focuses on the knowledge and purpose elements.

{¶18}  Even though Stevens appears to concede in his reply brief that the state presented sufficient evidence that he altered and concealed the ankle monitor, we must determine when those events occurred in order to address the next element of the offense—whether Stevens knew an official proceeding or investigation was in progress or about to be or likely to be instituted when he altered or concealed the ankle monitor. The state presented evidence that the conditions of Stevens's bond required that he wear an ankle monitor, keep the monitor charged, not go to unapproved locations, and report to the probation department in person every Monday for monitor testing. The state also presented evidence that Stevens was wearing the ankle monitor on Friday, February 5, 2021, when he met with Captain Stewart, that he knew the monitor was powering down that evening, and that the probation department lost communication with the device at 10:01 p.m.  After the ankle monitor powered down, Stevens did not report to or otherwise

communicate with the probation department, and he was not wearing the device at the time of his arrest in May 2021.

**{¶19}** One can reasonably infer that Stevens had to alter the monitor, i.e., make it different in some way without changing it into something else, in order to take it off without authorization and that he concealed the monitor, i.e., placed it out of sight, by taking it from the location it was supposed to be—his ankle—and placing it somewhere unknown to the probation department.[3]  The precise moment when this conduct occurred is unknown.  However, there is no evidence it occurred before the monitor powered down,[4] and the jury could reasonably conclude that as alleged in the indictment, Stevens engaged in this conduct on or about February 8, 2021, i.e., around the time he failed to report to the probation department and began to flee from justice.

### B.  Knowledge of an Official Proceeding or Investigation

**{¶20}** Next, we address the knowledge of an official proceeding or investigation in progress or likely to be instituted element.  "The likelihood of an investigation is measured at the time of the alleged tampering."  *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, ¶ 110.

**{¶21}** R.C. 2901.22(B) states:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when the person is aware that such circumstances probably exist.  When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a

---

[3] The state does not appear to assert that Stevens altered or concealed the ankle monitor by failing to charge it when he had a duty to do so, and we find it unnecessary to address whether such an omission could constitute a violation of R.C. 2921.12(A)(1) in order to resolve this appeal.

[4] While one might expect the ankle monitor to have had the ability, when charged, to alert authorities to removal attempts, Captain Stewart did not testify to that fact.

high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

**{¶22}** "Notably, this definition does not encompass knowledge that a reasonably diligent person should, but does not, have. Rather, the statute requires the accused to be *aware* that conduct will probably cause a certain result or will probably be of a certain nature or that circumstances probably exist." (Emphasis sic.) *State v. Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, 49 N.E.3d 1248, ¶ 24. Consequently, "constructive knowledge is insufficient to prove that [an accused] knew that an investigation was ongoing or likely to be commenced * * *." *Id.* at ¶ 25. "Ohio law does not impute constructive knowledge of an impending investigation based solely on the commission of an offense, and therefore, the fact that an act was unmistakably a crime does not, by itself, establish that the accused knew of an investigation into that crime or that such an investigation was likely to be instituted." *Id.* at ¶ 2. However, "knowledge of a likely investigation may be inferred when the defendant commits a crime that *is* likely to be reported." (Emphasis sic.) *Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, at ¶ 118.

**{¶23}** Stevens maintains that there is no evidence that he had the requisite knowledge. He asserts that "[a]t the time of the conduct resulting in the tampering with evidence charge—February 5, 2021—[he] had been indicted for attempted burglary, drug possession, and weapons charges, and he was out on an O.R. bond," and "[t]he only likely investigation or proceeding would have been into those charges." He asserts that there was "no other criminal activity that would have resulted in an investigation or proceeding involving the ankle monitor and his whereabouts." Stevens claims the ankle monitor "was merely part of an administrative process" while he was on bond "to ensure

that he showed up to pretrial hearings and the jury trial," and the ankle monitor data "was not relevant to any of his criminal behavior or the charges he was facing or would likely face." Therefore, "it is impossible" for him "to have had knowledge of an official proceeding or investigation in progress or likely to be instituted." Stevens asserts that prior to Monday, February 8, 2021, he "had not violated any bond requirements and had remained in contact with the probation department." He asserts that the probation department's loss of contact with the ankle monitor "clearly did not trigger any proceeding or investigation" and "[r]emoving the monitor did not, by itself, establish that" he "knew an investigation was likely to be instituted." He "did not know and could not have known that an investigation into the later removal or concealment of the monitor would likely be instituted, given the last conversation he had with Captain Stewart and that the monitor itself had powered down."

{¶24} After viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found that when Stevens altered and concealed the ankle monitor on or about February 8, 2021, he knew that an official proceeding or investigation was in progress or was about to be or likely to be instituted. The state presented evidence that Stevens was arrested and charged with possession of drugs and drug paraphernalia and weapons offenses on December 11, 2020, and he was released on bond on December 23, 2020. The conditions of his bond included restrictions on the locations he was allowed to go (the specifics of which are not in evidence), wearing an ankle monitor to track his whereabouts, charging the ankle monitor each night, and reporting to the probation department in person every Monday for monitor testing. Stevens knew the monitor was powering down the evening of February 5, 2021, and the

probation department lost communication with it at 10:01 p.m. Although Stevens indicated to Captain Stewart that he was trying to charge the device but unable to do so, the Monday after the device powered down, he did not report to the probation department to resolve the issue. He did not report for any other Monday meeting or otherwise communicate with the probation department again, and he was not wearing the ankle monitor at the time of his arrest in May 2021.

{¶25} Based on this evidence, the jury could reasonably find that when Stevens altered and concealed the ankle monitor, he knew that an official investigation was in progress and that an official proceeding was likely to occur in connection with the events of December 11, 2020. *See generally* R.C. 2921.01(D) (" 'Official proceeding' means any proceeding before a * * * judicial * * * agency or official authorized to take evidence under oath * * *"). The jury could also reasonably find that when Stevens altered and concealed the ankle monitor, he was planning to or had already failed to report to the probation department. And the jury could reasonably find that Stevens knew his absence would be noticed and that the probation department was likely to institute an official investigation into his violation of the conditions of his bond requiring him to charge the ankle monitor and report to the probation department and into his whereabouts. In reaching this conclusion, we observe that some of Stevens's arguments about the knowledge element focus on whether the ankle monitor was relevant to any official proceeding or investigation in progress or about to be or likely to be instituted. However, that is a separate issue we will address in the next section.

C.  Purpose to Impair Value or Availability as Evidence

**{¶26}** Finally, we address the purpose of impairing the potential evidence's availability or value in such proceeding or investigation element. Here, the indictment alleged that Stevens acted with purpose to impair a thing's availability as evidence, not its value. The trial court instructed the jury accordingly.

**{¶27}** "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). " 'The intent of an accused person dwells in his mind' " and " 'can never be proved by the direct testimony of a third person.' " *State v. Johnson*, 56 Ohio St.2d 35, 38, 381 N.E.2d 637 (1978), quoting *State v. Huffman*, 131 Ohio St. 27, 1 N.E.2d 313 (1936), paragraph four of the syllabus. " 'It must be gathered from the surrounding facts and circumstances under proper instructions from the court.' " *Id.*, quoting *Huffman* at paragraph four of the syllabus. For the "purpose" element to be met, "the act that constitutes tampering must be a separate act from those that make up the crime itself." *State v. Crocker*, 2015-Ohio-2528, 38 N.E.3d 369, ¶ 37 (4th Dist.)

**{¶28}** R.C. 2921.12(A)(1) "requires proof that the defendant intended to impair the value or availability of evidence that related to an existing or likely official investigation or proceeding." *Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, at syllabus. "[T]he evidence tampered with must have some relevance to an ongoing or likely investigation to support a tampering charge." *Id.* at ¶ 16. Relevant evidence is "[e]vidence tending to prove or disprove a matter in issue." *Black's Law Dictionary* (11th Ed.2019). *See generally* Evid.R. 401 (for purposes of the Ohio Rules of Evidence, defining relevant

evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). Direct or circumstantial evidence can be used to prove an item's relevance. *See Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, at ¶ 112-114.

{¶29} Stevens maintains that the "ankle monitor was not itself evidence relevant to an ongoing or likely investigation." He asserts that the "sole purpose of the ankle monitor was to provide real-time GPS data about [his] precise location." This data was "uploaded from the GPS unit to a computer system managed and monitored by a company that reported to the probation department," which "means the probation department possessed the stored data about [his] historical movements." Stevens asserts that there is no evidence that he "tampered with the data that had previously been generated" by the ankle monitor and even if he had, that data "would not be relevant to an ongoing or likely investigation or proceeding." According to Stevens, "[a]lthough a GPS monitor could be used to locate [him] and determine his whereabouts at any given time," "the monitor itself and the data it produces are not evidence of a crime," so the "removal or alteration" of the monitor "cannot constitute tampering with evidence."

{¶30} Stevens also maintains that there is no evidence that he took the ankle monitor off with the purpose of impairing its value or availability as evidence in an investigation or proceeding. Stevens asserts that "[w]hile his removal of the ankle monitor coincided with his failure to appear, it was not done to impair the monitor's value or availability as evidence in an investigation" because the "monitor and the data associated with it were not evidence of a crime that would be used in a criminal investigation or

proceeding." Stevens asserts that "as Captain Stewart acknowledged during trial, at the likely time of its removal, the ankle monitor could not sustain a charge and had powered down." "[T]he ankle monitor itself could not have been of any evidentiary value to the probation department or the court if the device was not charged, and so its removal or destruction did not impair its value." And his "purpose could not have been to impair the value of a nonworking device or a device that was no longer transmitting anything." Stevens further asserts that "the act that the state has labeled 'tampering' was not a separate act from those that make up a crime" and that the state "most likely conflated tampering with or alteration of the monitor with tampering with evidence." According to Stevens, most tampering cases "involve an act in which a person alters, destroys, conceals, or removes evidence with the intent of interfering with an investigation or proceeding," and typically "the defendant intends to cover up a crime." But here, "the monitor and its associated data at the time the monitor was removed would not have been evidence supporting a conviction." Stevens asserts that removing the monitor "may have itself been a crime of criminal damaging or a bond violation," but he "did not tamper with evidence that would be relevant to any criminal inquiries that were taking place or would take place."

{¶31} The ankle monitor had no relevance to the official investigation and likely official proceeding regarding the events of December 11, 2020. However, the ankle monitor did have relevance to the likely official investigation into the bond violation for failing to charge the ankle monitor. If the probation department had recovered the device, it could have been tested to determine whether it was capable of being charged. If it was, that would tend to prove that Stevens intentionally failed to charge the device in violation

of the conditions of his bond.  In addition, even though there is no evidence that the ankle monitor was working when Stevens took it off or that Stevens thought it might be, the device still had relevance to the likely investigation into his whereabouts.  If Stevens had continued to wear the "very thick" device on his ankle, the device would have drawn attention to him.  The device would have alerted third parties to the fact that he was an individual subject to supervision, would have aroused suspicions if he was at a location one would not expect such an individual to be allowed, and could have been compared to the probation department's photograph of the device assigned to him.  Thus, the ankle monitor could have been used to spot him, prove his identity, and thereby prove his whereabouts.

{¶32} Making the ankle monitor unavailable for purposes of a bond violation investigation for failure to charge the device may not have been at the forefront of Stevens's mind when he altered and concealed it.  At that time he would have been fleeing from justice—not trying to avoid revocation of his bond.  However, the jury could reasonably conclude Stevens altered and concealed the ankle monitor with purpose to impair its availability as evidence in the likely investigation into his whereabouts.

### D.  Conclusion

{¶33} For the foregoing reasons, we conclude that the state presented sufficient evidence to support the conviction for tampering with evidence in violation of R.C. 2921.12(A)(1).  Therefore, the trial court did not err when it overruled the Crim.R. 29 motion for judgment of acquittal regarding that offense.  We overrule the sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.


                                        For the Court


                                        BY: _____
                                             Michael D. Hess, Judge




### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**