[Cite as *Copley v. Ohio Dept. of Health* , 2010-Ohio-5416.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

PHYLLIS A. COPLEY,                      :
                                        :
    Plaintiff-Appellant,          :   Case No. 09CA31
                                        :
    vs.                           :   **Released: November 3, 2010**
                                        :
OHIO DEPARTMENT OF                      :   <u>DECISION AND JUDGMENT</u>
HEALTH,                                 :   <u>ENTRY</u>
                                        :
    Defendant-Appellee.           :
_____

<u>APPEARANCES:</u>

Richard F. Bentley, Wolfe & Bentley, LLP, Ironton, Ohio, for Appellant.

Richard Cordray, Ohio Attorney General, and Lisa M. Eschbacher, Senior
Assistant Ohio Attorney General, Health and Human Services Section,
Columbus, Ohio, for Appellee.
_____

Per Curiam:

{¶1} Appellant, Phyllis A. Copley, owner of an adult care facility

known as Home Sweet Home 2, appeals decision of the Lawrence County

Court of Common Pleas revoking and not renewing the license of Home

Sweet Home 2 pursuant to R.C. 3722.05, after multiple violations were

identified.  On appeal, Appellant contends that 1) the trial court abused its

discretion in finding there is sufficient reliable, probative and substantial

evidence to support upholding revocation and non-renewal of Appellant's

license; 2) Appellee failed to comply with all administrative regulations in conducting inspections and revocation and non-renewal of Appellant's license; 3) Appellee failed to comply with OAC 3701-20-05(H)(2) and R.C. 3722.06; and 4) Appellee failed to comply with OAC 3701-20-08 to give notice of violation and provide the facility an opportunity to correct.

{¶2} In our view, the trial court's decision was supported by reliable, probative and substantial evidence, and was in accordance with the law, we find the trial court did not abuse its discretion in affirming the director of the Ohio Department of Health's decision. As such, Appellant's first assignment of error is overruled. Further, because OAC 3701-20-05(H)(1), OAC 3701-20-08(A), and R.C. 3722.06 all permit the director of the Department of Health to revoke an adult care facility license upon identifying violations that jeopardize the health and safety of any of the residents, which finding was present herein, we cannot conclude that the trial court erred or abused its discretion in affirming the revocation and non-renewal of Appellant's license. Thus, Appellant's second, third and fourth assignments of error are overruled.

{¶3} Accordingly, the decision of the trial court is affirmed.

**FACTS**

{¶4} Appellant, Phyllis Copley, is the owner/operator of an adult care facility known as Home Sweet Home 2, (hereinafter HSH 2), located in Chesapeake, Ohio. In order to operate the facility, Appellant obtained a license from the Ohio Department of Health, (hereinafter ODH), which permitted her to house three to five residents in the facility. The record indicates that an ODH surveyor, Pam Gaston[1], came to HSH 2 on November 3, 2008, to conduct a "Bureau of Regulatory Compliance Pre-Hearing Inspection," which was a follow-up visit to an annual inspection that had previously been conducted. As a result of the follow-up survey, the surveyor issued a report alleging twenty-two rule violations.

{¶5} On December 2, 2008, the director of ODH sent a letter to Appellant notifying her that ODH was proposing to revoke and not renew her adult care facility license, based upon the violations identified during the survey, which ODH stated "jeopardized the health and safety of the residents" at the facility. As a result, Appellant requested a hearing on the proposed action, which was held on April 17, 2009. Pam Gaston, registered nurse and ODH surveyor, testified on behalf of ODH as to the rule violations

---

[1] Pam Gaston testified that she had been a registered nurse for 28 years and had been working as a surveyor with ODH for 4 years at the time of the survey. She further testified that she had been to the facility on prior occasions to conduct surveys.

and deficiencies noted during the November 3, 2008, survey. Appellant also testified at the hearing, along with two employees of HSH 2.

{¶6} After hearing evidence presented by both parties, on June 1, 2009, the hearing examiner issued a forty-five (45) page report and recommendation to ODH upholding the surveyor's findings on all twenty-two alleged violations, and stating that the violations "were violations that jeopardized the health and safety of residents at this facility." Further, the hearing examiner's recommendation was as follows:

"Based on the Findings of Fact and Conclusions of Law presented in this report, the hearing examiner recommends to the Director of the Ohio Department of Health that the Director's proposed actions, to revoke the adult care facility license held by Home Sweet Home 2, and to not renew the adult care facility license of Home Sweet Home 2, be affirmed, under Ohio Revised Code section 3722.05(A)(1)."

{¶7} Although Appellant filed objections to the report and recommendation of the hearing examiner, on June 17, 2009, the director of ODH issued an adjudication order revoking and not renewing Appellant's adult care facility license. In support of its decision, the director adopted the report and recommendation of the hearing examiner, noting the examiner's finding that "[t]he violations have been substantiated by a preponderance of the evidence and are sufficiently egregious and of sufficient duration to support the Director's proposed actions to revoke and not renew Home Sweet Home 2's adult care facility license."

{¶8} Thereafter, Appellant appealed the decision to the Lawrence County Court of Common Pleas.  On May 20, 2009, the trial court found that

"[m]any of the citations issued during the on-site inspection this court would find superfluous and not warrant the action as taken by the Ohio Department of Health.  However, this court does find certain citations are supported by reliable, probative, and substantive evidence which would support the revocation and/or nonrenewal of the license as issued to Home Sweet Home 2."

Of importance, the trial court upheld the following violations: 1) violation 1 (exceeding the number of allowed residents; 2) violation 2 (failing to provide proof of liability insurance); 3) violation 4 (failing to insure non-ambulatory individuals reside on the ground floor); 4) violations 12 and 13 (failing to maintain prescription medications in a locked storage and repackaging of medication); 5) violation 20 (requirement that all bedroom locks are capable of being opened from the inside without using a key).

{¶9} It is from this final, appealable order that Appellant now brings her timely appeal, assigning the following errors for our review.

## ASSIGNMENTS OF ERROR

I.      THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THERE IS SUFFICIENT RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE TO SUPPORT UPHOLDING REVOCATION AND NON-RENEWAL OF APPELLANT'S LICENSE.

II.     APPELLEE FAILED TO COMPLY WITH ALL
        ADMINISTRATIVE REGULATIONS IN CONDUCTING
        INSPECTIONS AND REVOCATION AND NON-RENEWAL OF
        APPELLANT'S LICENSE.

III.    APPELLEE FAILED TO COMPLY WITH OAC §3701-20-05(H)(2)
        AND ORC §3722.06.

IV.     APPELLEE FAILED TO COMPLY WITH OAC §3701-20-08 TO
        GIVE NOTICE OF VIOLATION AND PROVIDE THE FACILITY
        AN OPPORTUNITY TO CORRECT.

### STANDARD OF REVIEW

{¶10} "R.C. 119.12 sets forth a specific standard of review for administrative appeals; namely, a court of common pleas must affirm the decision of an administrative agency when that decision is supported by reliable, probative, and substantial evidence and is in accordance with the law." *Ruckstuhl v. Ohio Dept. of Commerce*, Geauga App. No. 2008-G-2873, 2009-Ohio-3146, at ¶ 19 (citation omitted); see, also *Just Like Home 2 v. Ohio Dept. of Health,* Trumbull App. No. No. 2010-T-0007, 2010-Ohio-3358, ¶ 17.

{¶11} "The evidence required by R.C. 119.12 can be defined as follows: (1) 'Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) 'Probative' evidence is evidence that tends to prove the

issue in question; it must be relevant in determining the issue. (3) 'Substantial' evidence is evidence with some weight; it must have importance and value." *Our Place, Inc. v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303 (footnotes omitted); *Just Like Home 2 v. Ohio Dept. of Health* at ¶ 18.

{¶12} "We review the court of common pleas decision for an abuse of discretion. * * * Where issues of law are involved, however, 'we exercise a plenary power of review.' * * * 'That is, issues of law require an "independent determination of the law to be applied to the facts found by the agency and held by the common pleas court to be supported by reliable, probative and substantial evidence." ' " *Ruckstuhl* at ¶ 22 (citations omitted).

{¶13} "Appellate review is limited to determining whether the trial court abused its discretion in finding the board's decision was supported by reliable, probative and substantial evidence." Id. at ¶ 51 (citation omitted). Furthermore, "[u]nder this standard of review, we cannot reverse the common pleas court's decision if it contains a mere error in judgment; instead, a reversal can only occur when the lower court's ruling was based upon a 'perversity of will, passion, prejudice, partiality, or moral delinquency.' " Id., quoting *Chlysta v. Ohio State Dental Bd.*, 174 Ohio App.3d 465, 2007-Ohio-7112, 882 N.E.2d 935, at ¶ 27 (citation omitted).

{¶14} These requirements are based on the "long-accepted principle that considerable deference should be accorded to an agency's interpretation of rules the agency is required to administer." *State ex rel. Celebrezze v. Natl. Lime & Stone Co.*, 68 Ohio St.3d 377, 382, 1994-Ohio-486, 627 N.E.2d 538; see, also *Just Like Home 2 v. Ohio Dept. of Health* at ¶ 22.

**ASSIGNMENT OF ERROR I**

{¶15} In her first assignment of error, Appellant contends that the trial court abused its discretion in finding there is sufficient reliable, probative and substantial evidence to support upholding revocation and non-renewal of Appellant's license. In this assignment of error, Appellant challenges the trial court's findings with respect to the six violations that were upheld. Bearing in mind the above standard of review, we will consider each violation upheld by the trial court.

**Violation 1:  (exceeding the number of allowed residents)**

{¶16} This violation was identified by the surveyor as being in violation of OAC 3701-20-02(B) "General prohibitions" which provides that "[n]o person shall admit to an adult care facility more residents than the number authorized by the facility's license." Appellant possessed a license for an adult family home, which R.C. 3722.01(A)(7) defines as "a residence or facility that provides accommodations and supervision to three to five

unrelated adults, at least three of whom require personal care services."  On

appeal, Appellant challenges this violation and also argues that the surveyor

based this violation on the hearsay statements of resident #5, who did not

testify at the hearing

{¶17} With respect to this violation, surveyor Gaston testified that

while she  initially counted only five residents in the facility, resident #5 told

her that a sixth resident had been sleeping at the facility on Friday and

Saturday nights.  Surveyor Gaston testified that she confirmed this fact with

Appellant, who admitted a sixth resident had been staying on weekends.

Surveyor Gaston testified that she also observed an extra bed in bedroom #4

where resident #5 resides.  Appellant, however, testified that there are only

five residents at the facility and that at the time of the survey, the additional

person visited during the day on weekends, but did not spend the night.  She

further testified that she was simply storing the extra bed in the facility.  She

denied admitting to surveyor Gaston that the other person stayed the night

on weekends.

{¶18} As stated by the hearing examiner who conducted the hearing:

"Some of the deficiencies cited in the survey were met with denials by Ms.
Copley, such as Resident #6 sharing Resident #5's bedroom on Friday and
Saturday night * * *.  The hearing examiner finds a preponderance of the
evidence indicating that from July, 2008 through November 3, 2008, Home
Sweet Home 2 on Friday and Saturday nights had six residents residing
within the facility in violation of Ohio Administrative Code rule 3701-20-

02(B) * * *. Ms. Copley's explanation of an unused, surplus bed, stored in Resident #5's bedroom, that had sheets, a blanket and a comforter arranged on the bed to look like that bed was slept in, is not credible."

{¶19} Regarding Appellant's argument that the reliance upon hearsay statements of resident #5 was in error, we note that "the hearsay rule is relaxed in administrative proceedings." *Hayes v. State Medical Board of Ohio* (2000), 138 Ohio App.3d 762, 742 N.E.2d 238 (discretionary appeal to the Supreme Court of Ohio was not allowed). Additionally, R.C. 119.09 "Adjudication hearing" provides that:

"[t]he agency shall pass upon the admissibility of evidence, but a party may at the time make objection to the rulings of the agency thereon, and if the agency refuses to admit the evidence, the party offering the same shall make a proffer thereof, and such proffer shall be made a part of the record of such hearing."

A review of the transcript from the evidentiary hearing reveals that Appellant failed to object to the testimony relating the hearsay statements of resident #5 and in fact, elicited more detailed information regarding resident #5 on cross examination. Further, as will be discussed in more detail, infra, Appellant admitted to certain other violations that alone were sufficient to warrant the revocation of her license.

{¶20} Thus, based upon the above testimony presented at the hearing coupled with the hearing examiner's careful consideration and rejection of Appellant's testimony, we cannot conclude that the trial court abused its

discretion in determining that ODH's decision regarding violation 1 was supported by reliable, probative and substantial evidence.

**Violation 2:  (failing to provide proof of liability insurance)**

{¶21} This violation was identified by the surveyor as being in violation of OAC 3701-20-03(B)(3) "License application and renewal procedures" which provides that

"[a] person seeking a license to operate an adult care facility shall submit to the director an application, on a form prescribed and provided by the director, which shall include the following items: * * * Proof of liability insurance in an amount not less than one hundred thousand dollars.  * * *."

Appellant concedes this violation but contends that because she cured this violation prior to the appeal to the trial court that the trial court abused its discretion in upholding the violation.  ODH points out that not only did Appellant concede this violation during the survey, she had still failed to obtain insurance at the time of the hearing.

{¶22} As stated by the hearing examiner in his report, "[t]here is no dispute that Home Sweet Home 2 does not possess proof of insurance as required by Ohio Administrative Code rule 3701-20-03(B)(3) and had never held such insurance since its opening in 2004."  Further, as reasoned by the director of ODH in his adjudication order:

"several of the Objections state that violations are now 'cured' because of changes that have been made in the facility.  Such changes, however, do not alter the fact that violations existed at the time of the survey.  As an

example, the Objections state that the owner now has liability insurance. However, the owner did not have insurance at the time of the November, 2008, survey and is submitting it in June, 2009, for the first time."

{¶23} Thus, in light of the foregoing testimony and Appellant's concession that she was not in compliance with this rule at the time of the survey or the hearing, we cannot conclude that the trial court abused its discretion in determining that ODH's decision regarding violation 2 was supported by reliable, probative and substantial evidence.

### Violation 4: (failing to insure non-ambulatory individuals reside on the ground floor)

{¶24} This violation was identified by the surveyor as being in violation of OAC 3701-20-10(C)(6)[2] "Fire protection standards for adult family homes" which provides that "[e]ach adult family home shall comply with the following fire protection standards: * * * (6) Each home shall locate non-ambulatory individuals' bedrooms on a floor that exits to ground level. * * *." Surveyor Gaston testified that on the day of the survey she found resident #2, who after observation she determined to be non-ambulatory, in bedroom #3 on the second floor. Further, although Appellant initially denied that resident #2 was on the second floor, on cross-

---

[2] The record indicates that the surveyor mistakenly labeled this a violation of OAC 3701-20-10(C)(5), which was an error and should have stated (C)(6).

examination she admitted that resident #2 lived on the second floor of the facility.

{¶25} As locating a non-ambulatory patient on the second floor clearly jeopardized the health and safety of that resident, especially in the event of a fire situation, we cannot conclude that the trial court abused its discretion in determining that ODH's decision regarding violation 4 was supported by reliable, probative and substantial evidence. The fact that Appellant remedied that situation by moving the resident after the survey is irrelevant as such precautions should have been taken in the first instance.

### Violations 12 and 13: (failing to maintain prescription medications in locked storage and repackaging of medications)

{¶26} These violations were identified by the surveyor as being in violation of OAC 3701-20-17(G)(1) and (2) "Personal care services; resident medications; home health care" which provide as follows, respectively:

"(G)   In addition to the requirements of paragraph (C) of this rule, ACFs shall handle residents' medications in accordance with this paragraph.

(1)    The facility shall ensure that residents' prescription medications are kept in locked storage areas, except that medications requiring refrigeration shall be refrigerated. All prescribed medications shall be clearly labeled with the resident's name, the name and strength of the medication and the prescription number, if any, the date dispensed, the name of the physician, and the instructions for use.

(2)    The facility shall not remove and repackage medication from the pharmacy-dispensed container."

{¶27} At the hearing, surveyor Gaston testified with regard to the locked storage requirement that Appellant' practice consisted of utilizing color coded medication sets for each resident, whereby each resident had a large med set that was kept locked and was properly labeled.  However, within the larger med sets there were smaller med sets, that although were color coded, were not individually labeled.  Also, resident #5's individual med sets were delivered to his room for self- administration, where they were not kept in any kind of locked storage and were accessible to anyone else who may have entered the room.  Appellant did not deny these facts, but instead testified that she was unaware her practice and procedure violated the rules.  Bearing in mind the importance of preventing medication administration errors and  controlling access to medication, and in light of Appellant's outright admission to this rule violation, we cannot conclude that the trial court abused its discretion in determining that ODH's decision regarding violation 12 was supported by reliable, probative and substantial evidence.

{¶28} Further, with respect to violation 13, repackaging of medications, surveyor Gaston testified that, based upon interviews of Appellant, another staff member and one resident, Appellant was

repackaging[3] medications at the facility.  Although Appellant denied repackaging of the medications when she testified at the hearing, surveyor Gaston testified that during the survey Appellant had admitted she repackaged the medications, and that there was no evidence that the resident's family members did the repackaging, which would have been permissible.

{¶29} Based upon surveyor Gaston's hearing testimony, we cannot conclude that the trial court abused its discretion in determining that ODH's decision regarding violation 13 was supported by reliable, probative and substantial evidence.

### Violation 20:  (requirement that all bedroom locks are capable of being opened from the inside without using a key)

{¶30} This violation was identified by the surveyor as being in violation of OAC 3701-20-22(I)(12)(a) "Space, equipment, safety, and sanitation" which provides as follows:

"I.     Each facility shall meet the following safety and maintenance requirements:

* * *

(12)   Any locks on bedroom doors shall meet both of the following requirements:

---

[3] At this particular facility the "repackaging" essentially consisted of  Appellant taking the prescription medications out of the pharmacy dispensed containers and filling the residents' daily and/or weekly med sets.

(a)     All locks to residents' bedroom doors shall be capable of being opened from the inside without the use of a key, such as by pushing a panic bar, releasing a deadbolt, or using similar means.  The locks also shall be capable of being opened by a key from the outside.  * * *."

{¶31} Surveyor Gaston testified that during the survey, she found that the door lock on bedroom #1 would not release from the inside.  On cross examination, Appellant admitted that this surveyor had made her aware of a problem with that particular door lock during a previous survey as well, but that she had forgotten to replace it.  Appellant also testified that she had replaced the lock since the last survey.  On appeal, ODH contends that Appellant had been in violation of this rule for over two years and the fact that this violation has been cured is irrelevant and does not alter the fact that the violation existed at the time of the survey.

{¶32} The trial court apparently agreed with ODH, as do we.  As such, we cannot conclude that the trial court abused its discretion in determining that ODH's decision regarding violation 20 was supported by reliable, probative and substantial evidence.

{¶33} Accordingly, because we have concluded, based upon our review of the record, that ODH's revocation of Appellant's license was supported by reliable, probative and substantial evidence, we cannot conclude that the trial court abused its discretion in upholding ODH's

findings with respect to violations, 1, 2, 4, 12, 13 and 20. Thus, Appellant first assignment of error is overruled in its entirety.

## ASSIGNMENT OF ERROR II

{¶34} In her second assignment of error, Appellant contends that Appellee failed to comply with all administrative regulations in conducting inspections and revocation and non-renewal of Appellant's license. Specifically, Appellant argues that because she had cured most of the violations at the time of the hearing, with the exception of the liability insurance requirement, ODH should have considered a lesser penalty before it revoked her facility license. Appellant further argues that the trial court abused its discretion in not finding that OAC 3701-20-05(H)(2) required ODH to give her an opportunity to correct the violations before revoking her license.

{¶35} OAC 3701-20-05(H)(1)-(5) "Issuance, renewal and denial of licenses" provides as follows:

"(H) If any adult care facility fails to comply with any requirement of Chapter 3722. of the Revised Code or with any rule of this chapter or Chapter 3701-13 of the Administrative Code, *the director may do any one or all of the following:*

*(1) In accordance with Chapter 119. of the Revised Code, deny, revoke, or refuse to renew the license of the facility;*

*(2) Give the facility an opportunity to correct the violation, in accordance with section 3722.06 of the Revised Code;*

(3) Issue an order suspending the admission of residents to the facility, in accordance with section 3722.07 of the Revised Code;

(4) Impose a civil penalty in accordance with section 3722.08 of the Revised Code; or

(5) Petition the court of common pleas for injunctive relief in accordance with section 3722.09 of the Revised Code."  (Emphasis added).

{¶36} According to the plain language of the statute, the director of ODH had authority to revoke Appellant's license based upon the identified rule violations.  See, also *Harris Group Home v. Ohio Dept. of Health*, Summit App. No. 21033, 2002-Ohio-5034 (noting that R.C. 3722.05 also "provides that the director of health may deny, revoke, or refuse to renew the license of an adult care facility if the facility fails to comply with any requirement of R.C. Chapter 3722 or any rule adopted under that Chapter."). There is no mandatory requirement that Appellant be given an opportunity to correct the violations before having her license revoked.  Importantly, the specific code section relied upon by Appellant in support of her argument, OAC 3701-20-05(H)(2) references R.C. 3722.06, which contains an important exception, providing, in pertinent part, as follows:

"*except in cases of violations that jeopardize the health and safety of any of the residents*, if the director determines that a licensed adult care facility is in violation of this chapter or of rules adopted pursuant to this chapter, the director shall give the facility an opportunity to correct the violation." (Emphasis added).

**{¶37}** As previously mentioned, the director of ODH specifically determined that the violations found at Appellant's adult care facility jeopardized the health and safety of the residents. By making this argument, Appellant implicitly argues that the violations upheld by the trial court must not have jeopardized the health and safety of the residents. However, we find that violations relating to medication storage, labeling and administration, failing to locate non-ambulatory residents on the ground level and failing to ensure residents can release their door lock from the inside of their room, all directly jeopardized the health and safety of the residents.

**{¶38}** Thus, we cannot conclude that Appellee, ODH, failed to comply with administrative regulations in revoking Appellant's adult care facility license, rather than allowing her an opportunity to correct the violations first. It is important to note that several of these violations, specifically the door lock problem and the medication labeling problem had been identified in prior surveys but had failed to be corrected when given the opportunity to do so. Accordingly, Appellant's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

{¶39} In her third assignment of error, Appellant contends that Appellee failed to comply with OAC 3701-20-05(H)(2) and R.C. 3722.06. As set forth above, we have already determined that ODH did not fail to comply with OAC 3701-20-05(H)(2) and R.C. 3722.06 in revoking Appellant's adult care facility license. Thus, for the same reasons already discussed under Appellant's first and second assignments of error, Appellant's third assignment is overruled.

## ASSIGNMENT OF ERROR IV

{¶40} In her fourth assignment of error, Appellant contends that Appellee failed to comply with OAC 3701-20-08 to give notice of violation and provide the facility an opportunity to correct. OAC 3701-20-08 provides in pertinent part as follows:

"(A)   * * * *except in cases of violations that jeopardize the health and safety of any of the residents*, if the director determines that a licensed facility is in violation of Chapter 3722. of the Revised Code, Chapter 3701-13 of the Administrative Code, or this chapter, he or she shall give the facility an opportunity to correct the violation."  (Emphasis added).

The language contained in this rule mirrors the language contained in R.C. 3722.06, which we have already determined to contain an exception for situations where residents' health and safety are in jeopardy as a result of rule violations. Thus, for the same reasons expressed in our analysis of

Appellant's first, second and third assignments of error, Appellant's fourth

assignment of error overruled.

**JUDGMENT AFFIRMED.**

# JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

McFarland, P.J., Harsha, J. and Abele, J.: Concur in Judgment and Opinion.

For the Court,

BY:   _____
      Matthew W. McFarland
      Presiding Judge


BY:   _____
      William H. Harsha, Judge


BY:   _____
      Peter B. Abele, Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**