[Cite as *Denuit v. Ohio State Bd. of Pharmacy*, 2013-Ohio-2484.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
JACKSON COUNTY

| | | |
|---|---|---|
| RAYMOND P. DENUIT R.Ph., | : | Case Nos. 11CA11 |
| | : | 11CA12 |
| Appellant-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| OHIO STATE BOARD OF PHARMACY, | : | |
| | : | **RELEASED 6/13/13** |
| Appellee-Appellant. | : | |

_____
APPEARANCES:

Michael DeWine, Ohio Attorney General, and Sean M. Culley, Ohio Assistant Attorney General, Columbus, Ohio, for appellee-appellant.

Elizabeth Y. Collis, Collis, Smiles & Collis, LLC, Columbus, Ohio, for appellant-appellee.
_____
Harsha, J.

{¶1}   The Ohio State Board of Pharmacy (the "Board") appeals the Jackson County Court of Common Pleas judgment reversing the Board's decision to indefinitely suspend the license of Raymond Denuit and ordering him to pay a monetary penalty. The Board found that Denuit fondled the breast of an unwilling pharmacy employee and committed other misconduct. The Board concluded that collectively, Denuit's actions constituted gross immorality and unprofessional conduct in the practice of pharmacy under R.C. 4729.16, indefinitely suspended his license, and ordered him to pay a $6,500 penalty. In a 2010 decision, the common pleas court upheld the Board's finding that Denuit improperly fondled the employee but remanded the matter for reconsideration of the appropriate sanction because it rejected the Board's findings of other misconduct. The court also found that $500 was the maximum allowable financial

penalty and remanded the matter.  Subsequently, the Board found that the fondling incident by itself constituted gross immorality and unprofessional conduct in the practice of pharmacy.  The Board again ordered an indefinite suspension but reduced the monetary penalty to $500.  In a 2011 decision, the common pleas court rejected the Board's new findings and reversed its order.

{¶2}    Initially, the Board contends that the common pleas court violated the law of the case doctrine.  The Board argues that in the 2010 decision, the court found that the fondling incident alone constituted gross immorality and unprofessional conduct in the practice of pharmacy.  And the Board claims that it was improper for the court to reach the opposite conclusion in its 2011 decision.  However, in the 2010 decision the court actually found it could not determine whether the Board concluded that fondling alone, i.e., when considered without the other findings of misconduct the court rejected, constituted gross immorality or unprofessional conduct in the practice of pharmacy.  The court implicitly remanded for the Board to consider that issue, which the Board did.  Moreover, even if the court ruled in the manner the Board suggests, the 2010 decision was interlocutory, and the law of the case doctrine does not apply to interlocutory decisions.  Therefore, until it issued a final order, the court was free to alter its 2010 decision.

{¶3}    Next, the Board generally argues that when considering an appeal from an agency's order under R.C. Chapter 119, common pleas courts lack authority to remand cases.  Thus, the Board contends the court could not issue the 2010 remand order.  However, R.C. 119.12 permits the court to make an "other ruling" as long as it is supported by appropriate evidence and in accordance with the law.  A remand fits within

that authority.  Next and more specifically, the Board complains that the court "second guessed" the Board when it ordered the Board to "reconsider" the penalty imposed and thereby improperly interfered with the Board's discretion.  However, the Board misinterprets the remand order, which does not prevent the Board from imposing any appropriate penalty.

{¶4}    The Board also complains that the court erred when it rejected the Board's finding that the fondling incident constituted gross immorality under R.C. 4729.16 because the Board (and Revised Code) failed to define that phrase.  We agree. Because the Revised Code does not define gross immorality, we accord the phrase its plain and ordinary meaning, which can be ascertained from a dictionary.  The failure of the Revised Code and Board to explicitly state the dictionary definition does not render the Board's gross immorality finding unsupported by reliable, probative, and substantial evidence or not in accordance with law.  Moreover, as a matter of law, we find that Denuit's conduct satisfies the definition of gross immorality.  This decision renders the Board's arguments about Denuit's other alleged misconduct moot.  However, we must remand for the court to consider Denuit's arguments that the court did not address regarding the terms of his suspension and requirements for reinstatement of his license.

## I.  Facts

{¶5}    Kevin Kinneer, one of the Board's compliance agents, received information that CVS terminated Denuit for improperly touching another employee while Denuit was filling in as a relief pharmacist at a Portsmouth, Ohio location.  Kinneer investigated the incident, and the Board conducted an administrative hearing.  Rachel Carver, a CVS shift supervisor, testified that on April 20, 2007, she was working and

Denuit was the pharmacist on duty. Around 9 p.m., she went into the office to count cash register tills. As she sat, Denuit, who had closed the pharmacy for the night, came up behind Carver and placed the pharmacy key beside her. Denuit put a hand on her shoulder and used his other hand to unbutton one of her shirt buttons. He slid a hand under her bra and touched her breasts. After Denuit stopped, she asked whether his wife knew he was a "dirty old man" and reminded Denuit that he was on camera. Carver testified that she never had a consensual sexual relationship with Denuit.

{¶6}    Kinneer testified that he obtained written statements Denuit and Carver gave to CVS. Denuit wrote that Carver was "stressed" so he gave her a back and neck message. Carver "turned [and] to me seemed to invite breast massage, was contact for moment. I, then left [and] went home. Nothing else happened, I thought she was OK [with] touching of breast." When Kinneer confronted Denuit with his written statement, Denuit indicated it was not what he meant to say. Denuit denied touching Carver's breast and claimed if he did it was only by accident. Denuit gave another written statement in which he again stated that he gave Carver a neck and back massage. Denuit wrote that "[p]ossibly on [Carver's] swivel chair when she turned, breast may have been touched." Kinneer testified about video footage of the incident he received from CVS. He testified that in his opinion the footage was consistent with Carver's story and observed that at no time did Carver turn in the swivel chair and place Denuit in a position to accidentally brush her breast.

{¶7}    Denuit testified under subpoena and invoked his Fifth Amendment right in response to questions about the incident with Carver.

{¶8}    After the hearing, the Board found that Denuit: (1) was a licensed

pharmacist in Ohio; (2) fondled the breast of a pharmacy store-front employee in violation of R.C. 2907.06(A)(1); (3) lied to a Board agent investigating his actions in violation of R.C. 2921.13(A)(3); and (4) failed to cooperate with the Board investigation and divulge all relevant information on request in violation of R.C. 4729.19. The Board concluded that its second, third, and fourth findings constituted "being guilty of gross immorality" and "unprofessional conduct in the practice of pharmacy" under R.C. 4729.16. In addition, the Board concluded that the fourth finding constituted a violation of R.C. 4726.16(A)(5). The Board imposed a $6,500 penalty on Denuit and indefinitely suspended his license.

{¶9}    Denuit filed an appeal in the Jackson County Court of Common Pleas in case number 09CIV0141. On February 22, 2010, the court issued a Decision and Order finding there was reliable, probative, and substantial evidence to support the Board's second finding of fact (related to the fondling incident) but not the third or fourth findings. The court also found that the "maximum monetary penalty which Appell[ee] may impose, pursuant to 4729.16(A) is Five Hundred Dollars ($500.00)." The court concluded it had insufficient information to determine "whether a violation of O.R.C. 2907.06(A)(1) in and of itself constitutes gross immorality as provided in O.R.C. 4729.16(A)(1) and constitutes unprofessional conduct in the practice of pharmacy as provided by O.R.C. 4729.16(A)(2)." And the court remanded the matter to the Board "for reconsideration of its adjudication of penalties pursuant to O.R.C. 4729.16(A)."[1]

---

[1] According to the parties' briefs, before the court issued this decision the Board issued a new order, identical to its first order with the exception that the Board reduced the monetary penalty from $6,500 to $2,500. This second order does not appear in the record. Apparently, Denuit appealed from this second order in common pleas case number 09CIV0161, which is still pending. The Board claims that in a status conference, "both parties and the Court agreed that issues pertaining to the Board's findings of fact, conclusions, of law, and penalties, would be briefed and argued in 09CIV0141, and the sole question in

{¶10}  On remand, the Board reiterated its initial finding that Denuit fondled the breast of a store-front employee without permission.  Then the Board stated:

> [T]he Board determined previously and now affirms its determination that this conduct constitutes gross immorality and unprofessional conduct.  As to gross immorality, the act of fondling an employee's breast when uninvited and offensive is clearly violative of not only law but of social sensibilities as well.  The Board is incensed that any pharmacist would even ponder the idea of sexually groping a subordinate employee.  To behave in such a manner is not only immoral but is grossly immoral.  The Board believes that Respondent used his position to exercise physical control over a pharmacy employee in this sexually offensive manner, and such is untenable.  As to unprofessional conduct in the practice of pharmacy, the Board is of the same opinion.  To force one's self on another in such a sexual manner in the confines of a Board-licensed facility, during hours of work or shortly thereafter while closing for the day, is exceptionally unprofessional.  This is so, especially considering that Respondent was a superior of the subordinate employee.  This Board expects pharmacists to act professionally, and Respondent's act in that regard was clearly unprofessional.

{¶11}  The Board imposed a $500 monetary penalty on Denuit and again indefinitely suspended his license.

{¶12}  In case number 10CIV0115, Denuit filed another notice of appeal with the common pleas court for the Board's post-remand order.  After the parties filed briefs, the court issued an April 26, 2011 Decision and Order.  The court noted that the Board did not provide "a standard or guideline which defines 'gross immorality.' "  And the court stated that "[t]he fact that the Board believes the Appellant's act to be 'grossly immoral' does not make it so without some standard by which a person can gauge or determine the effects of an action."  In addition, the court concluded that no evidence supported the Board's finding that Carver was Denuit's subordinate.  Therefore, the court held that the gross immorality finding was unsupported by "substantive [sic] and probative

---

09CIV0161 would be whether the Board retained jurisdiction to issue a new order once the original order had been appealed."  (Appellant's Br. 6).

evidence" and not in accordance with law. In addition, the court concluded that the finding of unprofessional conduct in the practice of pharmacy was "not supported by reliable, probative, and substantial evidence and is not in accordance with law." The court found that unprofessional conduct in the practice of pharmacy was defined in R.C. 4729.16(C), quoted that provision, and found that it was clear that Denuit's actions did "not meet the statutory definitions." Therefore, the court reversed the Board's decision.

{¶13} Subsequently, the Board filed two notices of appeal with this Court – one from the February 22, 2010 decision (appellate case number 11CA11) and one from the April 26, 2011 decision (appellate case number 11CA12). Denuit filed a motion to dismiss the appeal in 11CA11, arguing it was not timely filed. We denied his motion. We found that the 2010 decision was not a final, appealable order and thus did not have to be appealed within 30 days of its issuance. Because the 2010 decision was interlocutory, it did not become final until it merged into the final judgment of April 26, 2011. Thus, in reality both of the Board's appeals are from the same final order – the April 26, 2011 decision. Subsequently, we granted the Board's motion to consolidate the appeals.

## II. Assignments of Error

{¶14} The Board assigns five errors for our review:

First Assignment of Error: The court abused its discretion when it reversed its original decision, finding in its second decision that Denuit's conduct did not constitute gross immorality or unprofessional conduct in the practice of pharmacy.

Second Assignment of Error: The court acted unreasonably and arbitrarily when it concluded that the "gross immorality" standard in the pharmacy statutes is impermissibly vague.

Third Assignment of Error: The court acted unreasonably when it

misinterpreted the examples in the definition of "unprofessional conduct in the practice of pharmacy" as constituting an exhaustive and exclusive list.

Fourth Assignment of Error:  The court acted unreasonably and arbitrarily when it remanded the Board's first order for "reconsideration" of the penalty.

Fifth Assignment of Error:  The court acted unreasonably when it concluded that the record offered no support for the Board's finding that Denuit lied to a Board investigator and failed to cooperate [with] the Board's investigation.

## III.  Standards of Review

{¶15}  " 'R.C. 119.12 sets forth a specific standard of review for administrative appeals; namely, a court of common pleas must affirm the decision of an administrative agency when that decision is supported by reliable, probative, and substantial evidence and is in accordance with the law.' " *Copley v. Ohio Dep. of Health*, 4th Dist. No. 09CA31, 2010-Ohio-5416, ¶ 10, quoting *Ruckstuhl v. Ohio Dept. of Commerce*, 11th Dist. No. 2008-G2873, 2009-Ohio-3146, ¶ 19.  " 'The evidence required by R.C. 119.12 can be defined as follows: (1) "Reliable" evidence is dependable; that is, it can be confidently trusted.  In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue.  (3) "Substantial" evidence is evidence with some weight; it must have importance and value.' " *Copley* at ¶ 11, quoting *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571, 589 N.E.2d 1303 (1992).

{¶16}  "In undertaking its review, the common pleas court must give deference to the agency's resolution of evidentiary conflicts, but 'the findings of the agency are by no means conclusive.' " *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d

466, 470, 613 N.E.2d 591 (1993), quoting *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111, 407 N.E.2d 1265 (1980).  The common pleas court must presume the agency's findings of fact are correct and defer to them unless the court determines that the findings "are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable."  *Ohio Historical Soc.* at 471.  " 'With respect to purely legal questions, however, the court is to exercise independent judgment.' "  *Shelton v. Gallia Cty. Veterans Serv. Comm.*, 194 Ohio App.3d 80, 2011-Ohio-1906, 954 N.E.2d 1242, ¶ 11 (4th Dist.), quoting *VFW Post 8586 v. Ohio Liquor Control Comm.*, 83 Ohio St.3d 79, 82, 697 N.E.2d 655 (1998).

{¶17}  Our review is more limited than that of the common pleas court.  We are " 'to determine only [whether] the trial court has abused its discretion * * *.' "  *Shelton* at ¶ 9, quoting *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).  The phrase "abuse of discretion" implies "that the court's attitude is arbitrary, unreasonable, or unconscionable."  *Shelton*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).  " 'Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the [agency] or a trial court.  Instead, the appellate court must affirm the trial court's judgment.' "  *Shelton*, quoting *Pons* at 621.  " 'An appellate court does, however, have plenary review of purely legal questions.' "  *Shelton*, quoting *Nye v. Ohio Bd. of Examiners of Architects*, 165 Ohio App.3d 502, 2006-Ohio-948, 847 N.E.2d 46, ¶ 11 (10th Dist.).

IV.  Law of the Case Doctrine and the 2010 Decision

{¶18}  In its first assignment of error, the Board contends that the trial court

"abused its discretion when it reversed its [February 22, 2010] decision, finding in its [April 26, 2011] decision that Denuit's conduct did not constitute gross immorality or unprofessional conduct in the practice of pharmacy." (Appellant's Br. i). The Board argues that in the 2010 decision, the court affirmed the Board's finding that "Denuit fondled a co-worker in a sexual way that was offensive." (Appellant's Br. 8). The Board claims that though the court "did not say so outright, it also affirmed the Board's conclusion that the touching constituted both gross immorality and unprofessional conduct in the practice of pharmacy." (Appellant's Br. 8). The Board reasons that because the court rejected its other factual findings on Denuit's misconduct in the 2010 decision, the court would not have ordered the Board to reconsider its adjudication of penalties unless the court found that fondling alone constituted gross immorality and unprofessional conduct. And the Board argues that the court could not subsequently alter its 2010 decision because it constitutes law of the case.

{¶19} Whether the law of the case doctrine applies in a particular situation presents a legal question we review de novo. *See Frazier v. Rodgers Builders*, 8th Dist. No. 91987, 2010-Ohio-3058, ¶ 60. The Supreme Court of Ohio explained the doctrine in *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984): "[T]he doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." "The doctrine is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results." *Id.* Moreover, "[t]he law of the case applies only to final orders and not to interlocutory orders that are subject to the trial court's reconsideration." *Frazier* at ¶ 64.

**{¶20}** The Board misreads the common pleas court's 2010 decision.  The court specifically stated:  "In considering the conclusions of law adopted by the Appellee, as to Board conclusions #1 and #2, the Court finds there is insufficient information, considering the Court's finding of no violation concerning Appellant's statements, whether a violation of O.R.C. 2907.06(A)(1) in and of itself constitutes gross immorality as provided in O.R.C. 4729.16(A)(1) and constitutes unprofessional conduct in the practice of pharmacy as provided by O.R.C. 4729.16(A)(2)."  As we explain below, the court is merely stating that the wording of the Board's order made it impossible for the court to determine whether the Board found that the fondling incident alone constituted gross immorality or unprofessional conduct in the practice of pharmacy.

**{¶21}** In its findings of fact, the Board found three instances of misconduct by Denuit.  Then the Board determined that the three instances of misconduct "constitute being guilty of gross immorality" and "constitute being guilty of unprofessional conduct in the practice of pharmacy * * *."  The Board did not state that each instance of misconduct by itself constituted gross immorality and unprofessional conduct.  Instead, from the language used, it appears the Board concluded the three findings of misconduct *collectively* violated those standards.  However, the court found that only one of the three findings of misconduct was supported by the evidence, i.e., the fondling incident was supported and the findings related to Denuit's statements were not.  The court did not know whether the Board concluded that fondling alone, i.e., "a violation of O.R.C. 2907.06(A)(1) in and of itself," constituted gross immorality and unprofessional conduct under the Revised Code.

**{¶22}** In its remand instructions, the court simply stated it was remanding the

matter to the Board "for reconsideration of its adjudication of penalties pursuant to O.R.C. 4729.16(A)." The court did not specifically instruct the Board to determine whether fondling alone constituted gross immorality or unprofessional conduct in the practice of pharmacy. However, such an instruction is implicit. Obviously, the Board could not impose any penalties if it found that Denuit's conduct did not meet these standards.

{¶23} Moreover, even if the court had found in its 2010 decision that the fondling incident constituted gross immorality and unprofessional conduct, the law of the case doctrine does not bar the court from changing its mind in the 2011 decision. The doctrine applies only to final orders, not interlocutory orders. *Frazier*, 8th Dist. No. 91987, 2010-Ohio-3058, at ¶ 64. In a Februrary 22, 2012 Decision and Judgment Entry filed in 11CA11, we previously determined that the 2010 remand entry was not a final, appealable order. Thus, the 2010 decision was interlocutory and the trial court was free to reconsider it and change its position in the 2011 decision. Accordingly, we overrule the first assignment of error.

### V. Propriety of the 2010 Remand Order

{¶24} In its fourth assignment of error, the Board contends that the court "acted unreasonably and arbitrarily when it remanded the Board's first order for 'reconsideration' of the penalty." (Appellant's Br. i). The Board generally argues that nothing in the Administrative Procedure Act, R.C. Chapter 119, "gives a common pleas court authority to remand a case." (Appellant's Br. 13). However, R.C. 119.12 provides that if the court finds the Board's order is not supported by reliable, probative, and substantial evidence or in accordance with law, "it may reverse, vacate, or modify the

order *or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.*" (Emphasis added.) Therefore, we see no reason why as a general matter, the court could not issue a remand order, i.e., an "other ruling," as we are not aware of any rule or statute that prohibits it.

{¶25} More specifically, the Board complains that it has discretion to select the penalty for a violation so long as the penalty is in accordance with law. The Board admits that the original $6,500 penalty it imposed on Denuit was "legally defective" because it was "too high." (Appellant's Br. 12). However, the Board complains that instead of ordering it to cure the problem, the court only ordered it to "reconsider" the penalty. The Board contends that this instruction "intrudes on the Board's own discretion, and must not be allowed." (Appellant's Br. 12). The Board further argues: "Without identifying a problem with the penalty, the remand was nothing more than a suggestion to the Board that the court found something distasteful about the penalty. In doing so, the Court of Common Pleas intruded on the Board's authority to impose the penalty it saw fit. By remanding the case for reconsideration of the penalty – without identifying any issues with the penalty itself – the court acted arbitrarily and unreasonably to the Board's prejudice."

{¶26} The Board again misinterprets the 2010 decision. As we acknowledged in Section IV. above, the remand order simply instructs the Board to reconsider "its adjudication of penalties pursuant to O.R.C. 4729.16(A)." However, as we also explained in Section IV., implicit in the 2010 decision is an instruction for the Board to first determine whether a violation occurred at all, i.e., whether fondling alone constitutes gross immorality or unprofessional conduct in the practice of pharmacy.

Obviously if the Board found no violation occurred, it could not impose any penalty. And if the Board found a violation did occur, it could impose any penalty it chose so long as it was in accordance with law. The 2010 order does not interfere with the Board's discretion in this regard. The court did not tell the Board what penalty to impose. The only guidance on the penalty that the court gave was a finding that the "[t]he maximum monetary penalty which [the Board] may impose, pursuant to 4729.16(A) is Five Hundred Dollars ($500.00)." In other words, a financial penalty in excess of $500 (such as the Board's original $6,500 penalty) would not be in accordance with law.

{¶27} Admittedly, the remand instructions could have been more precise. However, the Board never objected to them, and the Board's actions below demonstrate that it understood those instructions as we have just explained them. The Board never sought clarification of the instructions before it acted on the remand order. Instead, the Board proceeded to consider and find that fondling alone constituted gross immorality and unprofessional conduct in the practice of the pharmacy. Then the Board "reconsidered" the penalty. It imposed the same penalties as before with the exception of modifying the original $6,500 monetary penalty to $500. The Board implicitly concedes that the court correctly found this was the maximum allowable monetary penalty, so we fail to see how the Board suffered any prejudice from the 2010 remand order. Accordingly, we overrule the fourth assignment of error.

VI. Gross Immorality

{¶28} In its second assignment of error, the Board contends that the common pleas court "acted unreasonably and arbitrarily when it concluded that the 'gross immorality' standard in the pharmacy statutes is impermissibly vague." In its 2011

decision, the common pleas court held that the Board's finding that Denuit committed a grossly immoral act when he fondled Carver was not supported by "substantive [sic] and probative evidence" or in accordance with law. The court found that in making its determination, the Board failed to provide a "standard or guideline" to define gross immorality. The court stated that "[t]he fact that the Board believes [Denuit's] act to be 'grossly immoral' does not make it so without some standard by which a person can gauge or determine the effects of an action." The court also found that the Board based its decision on its finding that Carver was Denuit's subordinate when no evidence supported such a finding.

{¶29} The Board does not appeal the court's decision on the issue of whether Denuit supervised Carver, thus we must consider them as only co-workers. The Board focuses its appeal on the court's findings about the Board's failure to provide a standard or guideline to define "gross immorality." The court's judgment suggests, but does not explicitly find, that R.C. 4729.16 is vague and can be arbitrarily applied because it does not explicitly define gross immorality.

{¶30} Statutory interpretation presents a legal issue we review de novo. *See In re O.H.*, 4th Dist. No. 09CA38, 2010-Ohio-1244, ¶ 8. "The primary goal in construing a statute is to ascertain and give effect to the intent of the legislature." *In re M.W.*, 133 Ohio St.3d 309, 2012-Ohio-4538, 978 N.E.2d 164, ¶ 17. "When analyzing a statute, we first examine its plain language and apply the statute as written when the meaning is clear and unambiguous." *Id.* We must "read words and phrases in context and construe them according to the rules of grammar and common usage." *Id.*, citing R.C. 1.42. If a statutory term is not defined, " 'it should be accorded its plain and ordinary

meaning.' " *State ex rel. Data Trace Information Servs., L.L.C. v. Cuyahoga Cty. Fiscal*

*Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288, ¶ 49, quoting *Rhodes v.*

*New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 17. "Courts

have used dictionary definitions to determine the plain and ordinary meaning of a

statutory term." *State v. Jackson*, 12th Dist. No. CA2011-06-096, 2012-Ohio-4219, ¶

34.

{¶31} R.C. 4729.16(A) provides:

The state board of pharmacy, after notice and hearing in accordance with Chapter 119. of the Revised Code, may revoke, suspend, limit, place on probation, or refuse to grant or renew an identification card, or may impose a monetary penalty or forfeiture not to exceed in severity any fine designated under the Revised Code for a similar offense, or in the case of a violation of a section of the Revised Code that does not bear a penalty, a monetary penalty or forfeiture of not more than five hundred dollars, if the board finds a pharmacist or pharmacy intern:

(1) Guilty of a felony or gross immorality;

* * *

{¶32} In R.C. 4729.16(A)(1), "gross" is used as an adjective to describe the type

of immorality required. *Webster's II New College Dictionary* 491 (1999) provides

several definitions of "gross" as an adjective, including: "Unmitigated in any way :

UTTER" and "Glaringly obvious : FLAGRANT." Thus, in our context, "gross" connotes

some heightened level of offensiveness; it is conduct that is flagrant or unmitigated in

character.

{¶33} According to the same source, immorality means "**1.** The quality or state of

being immoral. **2.** An immoral act or practice." *Id.* at 553. Immoral is defined as that

which is "[c]ontrary to accepted moral principles." *Id.* The word "moral," when used as

an adjective, has several definitions which include: "In accord with standards of what is

right or just in behavior[.]" *Id.* at 712.

**{¶34}** Therefore, a person is guilty of gross immorality for purposes of R.C. 4729.16(A)(1) when his conduct goes flagrantly beyond accepted standards of what is right or just in behavior or is unmitigated in any way.

**{¶35}** We are unaware of any precedent that states a statute is unconstitutional, i.e., not in accordance with law, if it does not explicitly define a relevant statutory phrase, particularly when the phrase's meaning is clear and can be ascertained from a dictionary. Moreover, the Board's failure to define gross immorality in its decision does not render its gross immorality finding unsupported by reliable, probative, and substantial evidence. Therefore, the common pleas court erred to the extent it found that based on the Board's failure to define "gross immorality," the Board's finding of gross immorality was unsupported by the evidence and not in accordance with law.

**{¶36}** Ordinarily we would remand this matter to the common pleas court to evaluate the Board's finding of gross immorality under the proper definition. However, in this case, a remand for this purpose is not necessary because we find that Denuit's conduct satisfies the definition as a matter of law. Undoubtedly, unbuttoning the shirt of a co-worker, reaching insider her garment, and fondling her under her bra without permission for approximately one minute[2] during work hours goes flagrantly beyond accepted standards of what is right or just in behavior. Moreover, Denuit's conduct was unmitigated in any way, i.e., it was not explicitly or implicitly invited.

**{¶37}** The Board's finding that Denuit's fondling of Carver constitutes gross immorality is supported by reliable, probative, and substantial evidence and is in

---

[2] Although Carver did not testify to the exact length of time of the intrusion, our review of the video reveals the fondling continued for approximately one minute.

accordance with law. Therefore, we sustain the second assignment of error. The Board had authority to suspend Denuit's license and impose the $500 monetary penalty based on this finding alone. *See* R.C. 4729.16(A). Therefore, the Board's third and fifth assignment of errors in which it makes arguments about Denuit's other alleged misconduct are moot. App.R. 12(A)(1)(c).

**{¶38}** However, at the common pleas level in his July 29, 2010 "APPELLANT'S BRIEF ON THE MERITS," Denuit argued that certain terms of his suspension and requirements for reinstatement of his license were not in accordance with law. The court did not reach these arguments because it found that Denuit committed no misconduct, so no punishment was warranted. Accordingly, we remand for the court to consider these arguments.

### VII. Summary

**{¶39}** We overrule the Board's first and fourth assignments of error. We sustain the second assignment of error and remand for further proceedings consistent with this opinion. The Board's third and fifth assignments of error are moot, and we need not address them.

JUDGMENT AFFIRMED IN PART,
REVERSED IN PART,
AND CAUSE REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED IN PART, REVERSED IN PART and that the CAUSE IS REMANDED. Appellant and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Jackson County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Hoover, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
William H. Harsha, Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**